# In re J-Y-C-, Respondent

*Decided August 9, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Under section 101(a)(3) of the REAL ID Act of 2005, Div. B of Pub. L. No. 109-13, 119 Stat. 302, 303 (to be codified at section 208(b)(1)(B)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(B)(iii)), a trier of fact may, considering the totality of the circumstances, base a credibility finding on an asylum applicant's demeanor, the plausibility of his account, and inconsistencies in statements, without regard to whether they go to the heart of the asylum claim.

(2)  The Immigration Judge properly considered the totality of the circumstances in finding that the respondent lacked credibility based on his demeanor, his implausible testimony, the lack of corroborating evidence, and his inconsistent statements, some of which did not relate to the heart of his claim.

FOR RESPONDENT:  Ron Behling, Esquire, Alhambra, California

BEFORE:  Board Panel: HURWITZ, Acting Vice Chairman; HOLMES and GRANT, Board Members.

HURWITZ, Acting Vice Chairman:

In a decision dated September 15, 2006, an Immigration Judge denied the respondent's applications for asylum and withholding of removal under sections 208 and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158 and 1231(b)(3) (2000), and his request for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture").  The respondent has appealed from that decision.  The appeal will be dismissed.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of the People's Republic of China who attempted to enter the United States at Chicago O'Hare International Airport on or about August 4, 2005.  After his attempted entry, the respondent was interviewed at the airport by officers of the Department of Homeland

Security ("DHS"). He was subsequently placed into removal proceedings and filed his applications for relief on September 12, 2006.

The respondent's claim relates to his alleged persecution in China on account of his Christian faith.[1] In particular, the respondent asserted that on January 1, 2005, after visiting a home church for the first time, he was arrested and detained for 48 hours.[2] According to the respondent, during the detention he was slapped and mistreated and was asked about the leader of the home church. After his release, he was allegedly dismissed from his job. The respondent also claimed to have hosted two home church meetings after his arrest, one on April 10, 2005, and the other on May 25, 2005. He stated that his sisters were also present at the first meeting and that the police arrived at the second meeting, but that he escaped arrest.

The respondent claimed that he went into hiding after the May 25, 2005, incident, and he then secured the services of a smuggler who helped him leave China. According to the respondent's testimony, he left China on his own passport and arrived in Japan. At that time, he discarded his passport on the advice of the smuggler and used another passport to travel from Japan to the United States. He stated that he destroyed that passport on the flight.

The Immigration Judge denied the respondent's claim, finding that he lacked credibility and therefore failed to meet his burden of proving eligibility for the requested relief. The Immigration Judge based his adverse credibility determination on inconsistencies between the testimony of the respondent and his sister, on inconsistent statements made by the respondent in the airport interview, on the respondent's demeanor, and on inherent implausibilities with regard to the claim. In addition, the Immigration Judge noted that the respondent failed to produce corroborative documentary or testimonial evidence that was reasonably available to him.

---

[1] On appeal, the respondent also claims that he is eligible for asylum as a result of his mother's death many years ago from an alleged forced sterilization procedure. Because the respondent failed to raise this claim below, it is not appropriate for us to consider it for the first time on appeal. *See Matter of Edwards*, 20 I&N Dec. 191, 196-97 n.4 (BIA 1990). In this regard, we note that although the mother's death was discussed below, eligibility for asylum on that basis was never specifically raised as a basis for the claim. In fact, counsel for the respondent described the asylum claim as "simply . . . persecution on the basis of Christianity."

[2] The respondent's written asylum application initially indicated that he was detained for 24 hours, but this claim was amended to state that the detention lasted 48 hours.

## II.  ANALYSIS

### A.  REAL ID Act Amendments

The respondent filed his applications for relief on September 12, 2006.  His asylum claim is therefore governed by the amendments to the Immigration and Nationality Act brought about by the passage of the REAL ID Act of 2005, Div. B of Pub. L. No. 109-13, 119 Stat. 302 ("REAL ID Act"), which was signed into law on May 11, 2005.  *See* REAL ID ACT § 101(h)(2), 119 Stat. at 305 (stating that the amendments are applicable to asylum applications filed on or after the date of enactment).  The REAL ID Act amended the Act to provide, in pertinent part, as follows:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim*, or any other relevant factor.

REAL ID Act § 101(a)(3), 119 Stat. at 303 (to be codified at section 208(b)(1)(B)(iii) of the Act, 8 U.S.C. § 1158(b)(1)(B)(iii)) (emphasis added).

The above factors listed in the amended Act, on which a trier of fact may base a credibility determination, were chosen because they were "identified in case law" and therefore would help establish a "uniform standard for credibility."  H.R. Rep. 109-72, at 166-67 (2005) (Conf. Rep.).  The credibility standard, as amended, is intended to allow Immigration Judges to follow a "commonsense" approach while "tak[ing] into consideration the individual circumstances of the specific witness and/or applicant."  *Id.* at 167.  The amendment also clarifies that "if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal."  REAL ID Act § 101(a)(3) (to be codified at section 208(b)(1)(B)(iii) of the Act).[3]

---

[3]  The final version of the statute is more favorable to an asylum applicant than the approach taken in an earlier proposed version of the legislation, which provided for no presumption of credibility under any circumstances, including on appeal, if a trier of fact has not issued an explicit credibility determination.  *See* H.R. 418, 109th Cong. § 101(a)(3) (2005).

The REAL ID Act also amended the Act with regard to corroborative evidence. *See* REAL ID Act § 101(a)(3) (to be codified at section 208(b)(1)(B)(ii) of the Act). The statute now provides that an applicant's testimony may be sufficient to sustain his burden of proof without corroboration if it is demonstrably credible, persuasive, and probative of facts sufficient to demonstrate that the applicant is a refugee. *Id.* However, if the trier of fact determines that corroborative evidence should be produced, it "must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.*

In adding the provisions regarding corroboration, Congress intended to "[c]odify[] the BIA's corroboration standards." H.R. Rep. 109-72, at 165-66 (citing *Matter of S-M-J-*, 21 I&N Dec. 722 (BIA 1997)). The amendments to the Act continue to allow an alien to establish eligibility for asylum through credible testimony alone, but they also make clear that where a trier of fact requires corroboration, the applicant bears the burden to provide corroborative evidence, or a compelling explanation for its absence. *Id.* Therefore, under the Act as amended by the REAL ID Act, "an asylum applicant should provide documentary support for material facts which are central to his or her claim and easily subject to verification . . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet [his] burden of proof." *Matter of S-M-J-*, *supra*, at 725-26.

## B. Credibility and Corroboration

We must defer to the Immigration Judge's factual findings, including findings as to the credibility of testimony, unless they are clearly erroneous. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2007); *see also Matter of S-H-*, 23 I&N Dec. 462 (BIA 2002). For the following reasons, we conclude that the Immigration Judge's findings of fact as to the respondent are not clearly erroneous under the standards set forth in the REAL ID Act. *See United States v. National Ass'n of Real Estate Bds.*, 339 U.S. 485, 495 (1950) (stating that a factual finding is not "clearly erroneous" merely because there are two permissible views of the evidence).

The Immigration Judge observed that the respondent's testimony conflicted with that of his sister. Significantly, the respondent testified that he was arrested for the first time on January 1, 2005, mistreated, questioned, and held for 2 days. He further stated that after being released from jail 2 days later, he went home and saw his sister. His sister testified that she saw the respondent on January 1, 2005, and was told by their father that the respondent had been released several days earlier after being detained for about 20 hours.

These two stories cannot be reconciled. As the Immigration Judge noted, if the respondent indeed saw his sister on his release, then, according to her testimony, he could not have been arrested when he said he was. Furthermore,

the two stories are in conflict as to the length of the detention. The respondent's sister stated that he was held for 1 day, but the respondent claimed that he was held for twice that long.[4] Upon being confronted with the discrepancies, the respondent stated that his sister was mistaken about the date, and that he had not gone directly home the day of his release, as he had previously testified, but rather went to his "godsister's" home, and then to his own. This explanation is plainly at odds with the earlier testimony. Furthermore, noting the respondent's "rapid manner" of testimony, the Immigration Judge found that his demeanor suggested that this explanation was fabricated.

The Immigration Judge also found differences between the respondent's testimony and that of his sister as to the church meeting that allegedly occurred in the respondent's home on April 10, 2005. Although the respondent described his sister as being present for this meeting, she indicated that she was home for less than 15 minutes. She also did not corroborate that any type of religious activity took place. The Immigration Judge therefore concluded that the sister's testimony "not only fails to corroborate" the respondent's claim but "calls into question whether [the April 10] meeting ever took place."

The Immigration Judge also found that the respondent's testimony conflicted with his airport statement with regard to details about his trip from China, through Japan, to the United States. In his airport interview, he stated that he was given a green passport from the smugglers, that it contained his picture, and that he did not know the name that was in that passport. In contrast, the respondent testified at his hearing that the passport was black or grey and that it had his picture and his name in it.

We find it significant that the respondent does not argue that the airport interview was unreliable because of language barriers or other reasons, and that he does not even attempt to explain these inconsistencies on appeal. When confronted with the discrepancies below, the respondent indicated that the passport was in an envelope that was black or grey, an explanation that the Immigration Judge dismissed as incredible based in part on the respondent's "agitated" demeanor. In addition, the respondent told the airport interviewer that he only attended a church meeting twice, but he claimed in his application to have attended at least three such meetings. These inconsistencies, and the absence of a persuasive explanation, led the Immigration Judge to find that the respondent lacked credibility.

---

[4] As the Immigration Judge emphasized, the respondent initially claimed that his detention lasted for about 1 day but then amended his declaration to state that the detention lasted for 48 hours. *See supra* note 2.

While *some* of these inconsistencies may not relate to the "heart of the respondent's claim,"[5] as required by established precedent of the United States Court of Appeals for the Ninth Circuit, the REAL ID Act no longer requires the trier of fact to find a nexus between inconsistencies and the "heart of the claim." *Cf. Ceballos-Castillo v. INS*, 904 F.2d 519, 520 (9th Cir. 1990) (indicating that inconsistencies must be substantial and go to the heart of the asylum claim in order to form the basis for a negative credibility finding). Accordingly, we find that the above-noted discrepancies constitute significant evidence of a lack of credibility in the respondent's claim under the REAL ID Act. Moreover, we also agree with the Immigration Judge's decision that inconsistencies between the respondent's testimony and the airport statements are indicative of a lack of credibility under the REAL ID Act. *See* REAL ID Act § 101(a)(3) (to be codified at section 208(b)(1)(B)(iii) of the Act) (allowing consideration of inconsistencies between the applicant's "written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made")).

In addition to the discrepancies noted, the Immigration Judge's adverse credibility determination is supported by findings regarding the demeanor of the respondent during testimony, as well as his finding that parts of the respondent's claim are inherently implausible. In particular, the fact that during his airport interview, the respondent could not identify the Bible as the book of Christian teachings casts doubt on his entire claim that he was persecuted for being a Christian. This is especially true in light of the respondent's testimony that he was given a Bible and was told to read it by his friend. Based on this evidence and the respondent's failure to ever attend a church in the United States, the Immigration Judge reasonably questioned whether his entire claim was plausible.

Finally, the respondent did not provide corroborating evidence of his practice of Christianity and his alleged past interactions with Chinese officials. First, as noted above, his sister's testimony failed to corroborate his attendance of home church meetings in China. Second, despite allegedly attending or hosting home church meetings here in the United States, the respondent did not submit an affidavit from anyone who could corroborate his role in home churches or the practice of Christianity in general.[6] Third, no statements from the respondent's relatives in China corroborate his claim. The respondent first claimed that this was because they were illiterate but later indicated that he

---

[5] Inconsistencies as to the length of the respondent's detention and his home church meeting on April 10, 2005, do go directly to the heart of the respondent's claim. *See Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir. 2001).

[6] The respondent's last-minute proffer, on the day of the hearing, of the letter from his pastor friend does not carry the burden to corroborate the claim. The letter lacked any letterhead or authenticating details, and the document was not submitted in a timely manner according to local rules.

never sought such documents. In either event, he has not shown that such information was unavailable to him, as required by the Act . *See* REAL ID Act § 101(a)(3) (to be codified at section 208(b)(1)(B)(ii) of the Act); *Matter of S-M-J-*, *supra*.

The Immigration Judge considered the totality of the circumstances, including the discrepancies in the respondent's testimony, his demeanor, the implausibility of the claim, and the lack of corroborating evidence, in finding that the respondent failed to provide credible evidence in support of his asylum claim. We therefore conclude that the Immigration Judge did not commit clear error in his determination that the respondent lacked credibility. *See* REAL ID Act § 101(a)(3) (to be codified at section 208(b)(1)(B)(iii) of the Act); 8 C.F.R. § 1003.1(d)(3)(i). Consequently, we find that the respondent has failed to carry his burden of proving eligibility for asylum. *See* 8 C.F.R. § 1208.13(a) (2007). Inasmuch as the respondent has not met the lower burden of proof required for asylum, it follows that he has also failed to satisfy the clear probability standard required to establish eligibility for withholding of removal. *See Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987).

## C. Convention Against Torture

We now turn to the respondent's claim that he will be tortured by Chinese Government officials upon his removal to China. We acknowledge evidence in the record that reflects hostility by the Chinese Government toward Christian church worship that has not been sanctioned by the Government. *See* Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China International Religious Freedom Report 2005* 1 (Nov. 8, 2006), http://www.state.gov/g/drl/rls/irf/2005/51509.htm (noting that "[m]embers of some unregistered religious groups, including Protestant and Catholic groups, were subjected to restrictions, including intimidation, harassment, and detention"). However, because the record lacks any credible evidence indicating that the respondent was a member of such a group, there is no indication that Chinese Government officials would have any interest in the respondent. Hence, there is no evidence that would tend to show the probability of his torture upon his removal to China on that basis, or for any other reason. *See* 8 C.F.R. § 1208.16(c)(2) (2007). Accordingly, the respondent has not shown that it is more likely than not that he will be tortured by or "at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity" upon removal to China, even considering country conditions. 8 C.F.R. § 1208.18(a)(1) (2007); *see also Kamalthas v. INS*, 251 F.3d 1279 (9th Cir. 2001); 8 C.F.R. § 1208.16(c)(2).

Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.