**LI HUA BAI, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**No. 08–3928.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 23, 2009.

Opinion Filed Dec. 28, 2009.

Peter L. Quan, Esq., New York, NY, for Petitioner.

Edward J. Duffy, Esq., Richard M. Evans, Esq., Thomas W. Hussey, Esq., Brooke M. Maurer, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: AMBRO, CHAGARES and ALDISERT, Circuit Judges.

## OPINION

PER CURIAM.

Li Hua Bai petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. We will grant her petition and remand for further proceedings.

### I.

Bai, a citizen of China, entered the United States in June 2006 without being admitted or paroled. The Government later instituted removal proceedings on that basis. Bai concedes removability, but seeks asylum, statutory withholding of removal and relief under the Convention Against Torture. She claims to have suffered mistreatment in the past and fears mistreatment in the future on account of her membership in a Christian church that is not authorized by the Chinese government.

Before an Immigration Judge ("IJ"), Bai testified that she converted to Christianity in 2003 while living in the Congo. Upon her return to China, she joined a government-approved church, but left after concluding that it did not "teach the Bible properly." She then joined an unauthorized "home" church with approximately seven members. Weekly services rotated among the members' houses and eventual-

ly were held at Bai's house, where Bai lived with her mother. Bai testified that, during a service on May 22, 2005, Chinese police burst into her house, broke tables and tore up Bibles. They arrested Bai, but let everyone else go after taking their names and addresses.

Police then interrogated Bai at the police station. During the interrogation, they kicked her off her chair, then kicked her and hit her with the chair while she was on the ground. Afterwards, they took her to prison, where authorities kept her in a cramped space and alternately denied her food and put it in a toilet before giving it to her. Finally, after ten days in prison, Bai agreed to sign an affidavit of some kind and the authorities released her. Authorities required her to check in at the police station once per week, which Bai did until leaving the country. She did not participate in church activities during that time, but she joined a church shortly after arriving in the United States. In addition to her testimony, Bai presented the 2005 Profile of Asylum Claims and Country Conditions, which describes the Chinese government's suppression of "underground" churches. (A.184–86.) She also presented the testimony of and a letter from her current minister, though that evidence was limited to Bai's practice of Christianity since arriving in this country.

The IJ appears to have found Bai's testimony credible, as we will assume it to be for purposes of review.[1] The IJ denied relief, however, on the ground that Bai failed to corroborate her claims. In particular, the IJ explained that Bai had not submitted any letters or statements from her mother, her Chinese minister, or her fellow Chinese church members to corrob-

---

1. In her oral decision, the IJ described Bai's testimony merely as "consistent," (IJ Dec. at 19, 23–24), but clarified following her decision that she found Bai "sympathetic" and

"purposely didn't make any negative credibility finding" in order to entitle Bai to a presumption of credibility before the BIA (A.179). *See* 8 U.S.C. § 1158(b)(1)(B)(iii).

orate her practice of Christianity in China or the break-up of the church meeting and her arrest. Bai explained that she asked family members to write letters on her behalf, but that they were afraid to do so because the Chinese government monitors the mail. The IJ rejected this explanation on the sole basis that Bai presented no proof that Chinese authorities open mail sent from China.

On appeal, Bai requested that the BIA consider the 2006 Country Report on Human Rights Practices prepared by the United States Department of State. That report states in relevant part: "During the year authorities monitored telephone conversations, facsimile transmissions, e-mail, text messaging, and Internet communications. Authorities also opened and censored domestic and international mail." (A. 38.) The BIA refused to consider the report, stating that it "may not consider evidence presented for the first time on appeal[.]" (BIA Dec. at 1.) The BIA also agreed with the IJ that Bai failed to carry her burden of proof because she "failed to present reasonably available evidence to support the material aspects of her claim." (*Id.* at 2.) Bai petitions for review.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252. "Because the IJ's corroboration discussion and determinations are affirmed and partially reiterated in the BIA's decision, we review them along with the BIA's decision." *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir.2009). In doing so, we review factual findings for substantial evidence and may not disturb them "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). We exercise plenary review over conclusions of law, subject to established principles of deference on agency review. *See Sioe Tjen Wong v. Att'y Gen.*, 539 F.3d 225, 231 (3d Cir.2008). This case is governed by the standards set forth in the REAL ID Act because Bai filed her petition after its effective date of May 11, 2005. *See Sandie*, 562 F.3d at 252 n. 2.[2]

Bai raises three arguments. First, she asserts in conclusory fashion that the BIA erred in requiring corroboration because her credible testimony by itself was sufficient to carry her burden of proof. It is true that credible testimony alone may be sufficient to carry an applicant's burden of proof, whether under the REAL ID Act or prior law. See 8 U.S.C. § 1158(b)(1)(B); *Sandie*, 562 F.3d at 252. Even before the REAL ID Act, however, "credible testimony alone [was] not always sufficient to meet the burden of proof." *Sandie*, 562 F.3d at 252. Instead, applicants could be required to "provide reliable evidence to corroborate testimony when it [was] reasonable to expect corroborating evidence and there [was] no satisfactory explanation

**2.** The REAL ID Act provides in relevant part: "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). We have not yet addressed this provision in a precedential opinion, but the BIA and other Courts of Appeals have held that it essentially codifies the BIA's pre-REAL ID Act standards for requiring corroboration. *See, e.g., Liu v. Holder*, 575 F.3d 193, 197 (2d Cir.2009); *Rapheal v. Mukasey*, 533 F.3d 521, 527 (7th Cir.2008); *In re J–Y–C–*, 24 I. & N. Dec. 260, 263 (BIA 2007). At least one other Court of Appeals has concluded that this provision "enhance[s] the evidentiary requirements for obtaining asylum." *Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir.2009). We need not address that issue because our disposition would be the same even if the REAL ID Act does nothing more than codify preexisting law on this point.

for its absence." *Id.* In addition, "[i]t [was] reasonable to expect corroboration for testimony that is central to an applicant's claim and easily subject to verification." *Id.* Thus, even under pre-REAL ID Act standards, the IJ was well within her rights to require Bai to provide reasonably available corroboration of the material aspects of her claim. Bai does not argue that the REAL ID Act has altered this framework in her favor, and we see no indication that it has. *See In re J–Y–C–,* 24 I. & N. Dec. at 265 (claim of Chinese underground church member insufficient under the REAL ID Act where, inter alia, he failed to "submit an affidavit from anyone who could corroborate his role in home churches or the practice of Christianity in general" or "statements from [his] relatives in China").[3]

Second, Bai argues that the BIA should have taken "judicial notice" of the 2006 country report she submitted on appeal, which she offered in support of her explanation for failing to provide corroborating evidence. We understand Bai to be referring to the concept of official or administrative notice, which allows the BIA to take notice of certain materials not appearing of record. *See Zubeda v. Ashcroft,* 333 F.3d 463, 479 (3d Cir.2003); 8 C.F.R. § 1003.1(d)(3)(iv). We agree that this is-

sue requires remand. In declining to consider the 2006 country report, the BIA wrote that "we may not consider evidence presented for the first time on appeal[.]" (BIA Dec. at 1.) While that is true as a general matter, we recently reiterated that the applicable regulation allows the BIA to take administrative notice of " 'the contents of official documents such as country condition reports prepared by the Department of State.' " *Sheriff v. Att'y Gen.,* 587 F.3d 584, 591–92 (3d Cir.2009) (quoting 67 Fed.Reg. 54878, 54891 (Aug. 26, 2002)).[4] In this case, the BIA did not acknowledge its discretion to take administrative notice of the 2006 country report or explain whether or why it was declining to exercise that discretion. Thus, we will remand for the BIA to consider in the first instance whether to take administrative notice of the 2006 country report.[5]

Finally, Bai asserts that the IJ and BIA denied her due process by "ignoring" her testimony and evidence. Bai, however, does not specify what evidence she believes that the IJ and BIA ignored, and our review of the record reveals no material evidence that they overlooked.

Accordingly, we will grant Bai's petition for review and remand for the BIA to

---

**3.** Bai does not contest that the corroboration the IJ sought is material to her claims and available to her. She also does not argue that the IJ failed to conduct the necessary three-part inquiry before requiring corroboration, and our review of the record confirms that the IJ properly engaged in that inquiry. *See Sandie,* 562 F.3d at 252–53.

**4.** As support for its statement, the BIA cited *In re Fedorenko,* 19 I. & N. Dec. 57, 74 (BIA 1984). The newly presented evidence at issue there, however, was a letter from a doctor peculiar to the petitioner's own case, not an official document potentially subject to administrative notice. *See id.* at 73–74.

**5.** The BIA also did not specifically address Bai's explanation for failing to provide corroborating evidence—i.e., that her family members are afraid to send it because Chinese authorities monitor the mail. We express no opinion on the adequacy of that explanation, but the BIA should specifically address it if it decides to take administrative notice of the 2006 country report. The BIA noted that, regardless of Bai's explanation for failing to provide corroborating evidence regarding her experiences in China, she offered no explanation for failing to corroborate her practice of Christianity in the Congo. We cannot say from the BIA's decision that such a failing, standing alone, would have resulted in the dismissal of her appeal.

consider whether to take administrative notice of the 2006 country report and, if necessary, specifically address Bai's explanation for failing to corroborate her credible testimony.