OPINION
PER CURIAM.
The petitioners — a mother and her two sons — seek review of the Board of Immigration Appeals’s (“BIA”) decision affirming a decision of the Immigration Judge (“IJ”) denying their application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (“CAT”). For the following reasons, we will deny the petition for review.
I.
Rina Dervishi and her sons, Saimir and Lulezim, are Albanian citizens who entered the United States in June 2005. They were immediately served with notices to appear that charged them with being removable under 8 U.S.C. § 1182(a)(6)(A)(i). The petitioners thereafter filed an application for asylum and related relief, claiming that they had been persecuted in Albania due to Ymerli Dervishi’s (Rina Dervishi’s husband) activities on behalf of the Albanian Democratic Party.
Mrs. Dervishi’s affidavit supporting her asylum application stated that her husband had been involved with the Democratic Party since 1991, when he led a demon- *402 station against the Communist government. In early 2005, Mr. Dervishi organized two meetings for neighborhood party members and Mrs. Dervishi asserted that, as a result of these activities, her family was targeted by the Socialist Party. In February and March 2005, she received four anonymous letters threatening to kidnap her sons if her husband did not cease his political activities. Then, at around 10:00 p.m. on March 13, 2005, her eighteen-year-old son, Saimir, was attacked on his way home from work by an unknown man and a neighbor, Bardhyl Behary, who was a policeman and Socialist. The attackers told Saimir that the beating was a “present for his father.” One of the men held Saimir while the other punched him several times in his stomach until he passed out. When Mrs. Dervishi found out what happened, she called her father who lived a few hours away in Lehse (Mrs. Dervishi and her family lived in Fier). After her father arrived, he took Mrs. Dervishi and her sons to his home. The next day they took Saimir to the hospital, where he was examined and had x-rays taken.
Mrs. Dervishi’s affidavit stated that she twice returned to Fier after the attack on Saimir. On her second trip, in April 2005, a few men — including Bardhyl Behai'y— got out of a car and approached her as she was shopping. Behary grabbed her arm and repeated the threat that if her husband did not dissociate from the Democratic Party then her sons would be kidnapped. The men then got into the car and left. She had not told her husband about the threatening letters until Saimir was attacked, and after the April incident, her husband agreed that she and them sons should leave Albania. Mrs. Dervishi has not seen or spoken to her husband since she left Europe in June 2005.
Mrs. Dervishi and her sons testified at the removal proceedings. The IJ, however, found their testimony to be fatally marred by inconsistencies. Each of petitioners gave slightly different accounts of the chronology of Saimir’s attack, Saimir’s level of consciousness after his attack, and when Mrs. Dervishi’s father arrived at the Dervishi home. The IJ also questioned Saimir extensively regarding exactly how many times he was punched in the stomach (he stated in his application statement that he had been punched several times but then testified that he was punched once and slapped in the face once) and the details of his hospital visit. Another inconsistency that the IJ focused on was Ms. Dervishi’s account of the April 2005 incident, as she testified that she kicked Behary whereas her affidavit made no mention of this. Further, Mrs. Dervishi’s father submitted a letter stating that the men who approached Mrs. Dervishi tried to force her into a car whereas Mrs. Der-vishi never testified to such an occurrence. The petitioners’ accounts of their movements after Saimir’s attack also differed. First, Mrs. Dervishi testified that, after Saimir’s beating, she went back to Fier once whereas her affidavit stated that she returned twice. Then, contradicting his mother’s story, Saimir testified that after the attack they spent most of their time at their home in Fier. Lulezim’s testimony was fairly unhelpful because by the time he was questioned about the period of time after the attack, he had started crying and answered most inquiries by stating that he did not remember what had happened. Finally, the IJ reprimanded Ms. Dervishi twice for coaching her sons as they were testifying.
The IJ concluded that the Dervishis were not credible based on the inconsistencies described above, as well as their failure to corroborate their claim.[1] Al- *403 tentatively, the IJ held that even if the petitioners were credible, the incidents described did not rise to the level of persecution. Because the Democratic Party is now in power in Albania, the IJ determined that the petitioners had not established a well-founded fear of future persecution.
The BIA affirmed the IJ’s decision, concluding that the adverse credibility determination was not “clearly erroneous.” See 8 C.F.R. § 1003.1(d)(3). The BIA listed many of the inconsistencies cited by the IJ, and determined that they, as well as the admonishments to stop coaching, constituted “significant evidence of a lack of credibility.” Matter of J-Y-C-, 24 I. & N. Dec. 260, 265 (BIA 2007). The BIA also noted that the petitioners did not provide evidence that Ms. Dervishi’s husband was a member of the Democratic Party or that supported that they had a well-founded fear of future persecution.
Through counsel, Mrs. Dervishi and her sons now petition for review of the BIA’s final order of removal.
II
We have jurisdiction to review the BIA’s final order of removal under 8 U.S.C. § 1252(a). The BIA’s decision is reviewed under the substantial evidence standard and will be upheld “unless the evidence not only supports a contrary conclusion, but compels it.” Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir.2003) (internal citation omitted). Here, the BIA’s conclusions concerning the IJ’s adverse credibility finding and the petitioners’ failure to meet their burden of proof regarding past persecution or a well-founded fear of future persecution are supported by substantial evidence. See Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir.2003). Under the REAL ID Act of 2005, credibility determinations may be made “without regard to whether any inconsistency, inaccuracy, or falsehood goes to the heart of the applicant’s claim.” 8 U.S.C. § 1158(b)(l)(B)(iii). However, the IJ must “[c]onsider[ ] the totality of the circumstances, and all relevant factors.” Id.; see Lin v. Mukasey, 534 F.3d 162, 167 (2d Cir.2008) (“[A]n IJ may rely on any inconsistency or omission in making an adverse credibility determination as long as the ‘totality of the circumstances’ establishes that an asylum applicant is not credible.”) (emphasis in original).
The BIA determined that many of the inconsistencies that the IJ identified, as well the lack of corroboration and Mrs. Dervishi’s demeanor, constituted “significant evidence of a lack of credibility.” Some of the inconsistencies — such as the exact number of times that Saimir was punched in the stomach or whether Ms. Dervishi kicked her attacker — may be trivial. However, when the inconsistencies between the petitioners’ testimony are considered along with the witness coaching and the lack of corroboration, they create strong doubts about the veracity of the petitioners’ claim and constitute substantial evidence to support the adverse credibility finding. See Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir.2007) (explaining that while some inconsistencies, “in isolation, may seem like small potatoes ... their cumulative effect is great”); Dia v. Ashcroft, 353 F.3d 228, 252 n. 23 (3d Cir.2003) (en banc) (stating that typically, the IJ’s reliance on “her personal observations of [the applicant’s demeanor or any other observations [is something] to which we must accord an even greater degree of deference”). In short, we see nothing in *404 the record that would compel a conclusion that the petitioners were credible.
Because we have accepted the adverse credibility determination, the petitioners’ case collapses, as without their credible testimony, the record does not demonstrate that they were persecuted. Further, because the petitioners were unable to establish eligibility for asylum, their claim for withholding of removal also fails. See Mudric v. Att’y Gen., 469 F.3d 94, 102 n. 8 (3d Cir.2006).
In sum, the evidence does not compel us to overturn the BIA’s decision to deny the petitioners’ claims, and for the foregoing reasons, we deny the petition for review.

. In support of their assertion that Mr. Dervi-shi was a member of the Democratic Party, *403 the petitioners submitted two letters from neighbors, stating that they attended February and March 2005 meetings that Mr. Dervi-shi had organized.