[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14190
Non-Argument Calendar
_____

Agency No. A095-794-661

BIN HUANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 17, 2014)

Before TJOFLAT, JORDAN, and EDMONDSON, Circuit Judges.

PER CURIAM:

Bin Huang, a native and citizen of China, appeals the decision of the Board of Immigration Appeals ("BIA") to dismiss his appeal from the Immigration Judge's ("IJ") denial of his application for asylum, 8 U.S.C. § 1158(a), withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). In his petition, Huang argues that substantial evidence does not support the BIA's denial of his application for asylum, withholding of removal, and CAT relief.

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion. Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted). To the extent that the BIA agreed with the IJ's reasoning, we should review the decisions of both the IJ and the BIA. *Id.*

Factual determinations are reviewed under the substantial evidence test, which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-29 (11th Cir. 2004) (*en banc*). The

2

substantial evidence test is "deferential" and "we may not 're-weigh the evidence' from scratch." *Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1323 (11th Cir. 2001). We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *D-Muhumed v. U.S. Att'y Gen.,* 388 F.3d 814, 818 (11th Cir. 2004). "To reverse the . . . fact findings, we must find that the record not only supports reversal, but compels it." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (emphasis added).

An applicant for asylum must meet the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. 8 C.F.R. § 208.13(a); *Al Najjar*, 257 F.3d at 1284. An applicant for withholding of removal and CAT relief bears the burden of establishing that it is "more likely than not" that he will be persecuted or tortured upon being returned to his country. *Sepulveda v. U.S. Att'y Gen*, 401 F.3d 1226, 1232 (11th Cir. 2005).

3

To establish asylum eligibility, the alien must, with specific and credible evidence, demonstrate (1) that he suffered past persecution on account of a protected ground, or (2) that he has a "well-founded fear" of future persecution on account of a protected ground. 8 C.F.R. § 208.13(b); *Al Najjar*, 257 F.3d at 1287. The applicant must demonstrate that one of those enumerated grounds "was or will be at least one central reason for persecuting" him or her. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). "Persecution on account of … political opinion … is persecution on account of the *victim's* political opinion, not the persecutor's." *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437-38 (11th Cir. 2004) (emphasis in original). The question is whether the persecutor is acting because of the alien's political opinion, not whether the alien has a political opinion. *See id.* at 438. An alien may also base an asylum claim on an imputed political opinion theory, whether correctly or incorrectly attributed to the applicant. *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1331 (11th Cir. 2011).

An alien must demonstrate a sufficient nexus between his political opinion and the alleged persecution. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (quotations omitted). On appeal, the record that "compels" is a high standard. In *Rodriguez Morales*, we determined that Morales failed to demonstrate a sufficient nexus between his political opinion and his alleged persecution, after a guerilla group attempted to recruit him to provide dental

4

services for their members and to help spread their political views. *Id.* at 891. We said that the guerrillas' desire to help spread their political views did not constitute the needed evidence that they persecuted Morales because of his political opinion. *Id.* Furthermore, the record supported the inference that he was threatened merely for his refusal to provide dental services, not for any political opinion he had or was believed to have. *Id.* An alien may establish persecution if it is, in part, motivated by a protected ground. *Cardona Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 821 (11th Cir. 2007). Still, in *Cardona Rivera*, we determined that a family's decision to pay no war tax to a guerilla group did not establish persecution on account of a political opinion. *Id.* at 823. The IJ's finding that the guerillas' motive for persecuting the petitioners' family was to raise funds for its war against the Columbian government, and not because the family supported a rival political party, was no reversible error. *Id.*

We have written that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that [m]ere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotations omitted); *see also Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171 (11th Cir. 2008) (concluding that no persecution occurred when an alien was detained for 36 hours after participating in a political rally, and during his detention, police officers beat him severely enough to warrant a two-day hospital

stay, several medications, and 2 weeks of rest).  "In determining whether an alien has suffered past persecution, the [factfinder] must consider the cumulative effects of the incidents."  *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007).

To establish a well-founded fear of future persecution, the applicant must show that there is a "reasonable possibility" of suffering persecution if he returns to his home country.  *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007).  The fear of future persecution must be "subjectively genuine and objectively reasonable" and on account of a protected ground.  *De Santamaria v. Att'y Gen.*, 525 F.3d 999, 1007 (11th Cir. 2008).  "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution[,]" and "[i]n most cases, the objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution."  *Al Najjar*, 257 F.3d at 1289 (quotation omitted).  To show an objectively reasonable fear of future persecution, the alien must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of [a protected ground]."  *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation omitted).

If an applicant is unable to prove his entitlement to asylum relief, he is generally precluded from qualifying for withholding of removal.  *Sepulveda*, 401 F.3d at 1232-33.  To obtain CAT relief, the torture must "be by or at the instigation

of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1239 (11th Cir. 2007) (quotation omitted).

A petitioner must exhaust all remedies on a particular claim; otherwise, we lack jurisdiction to consider the claim. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). The exhaustion doctrine requires the petitioner to raise claims before the agency, to thereby ensure that the agency had a full opportunity to consider the petitioner's claims. *Id.* The BIA's *sua sponte* discussion of an issue is not enough to amount to exhaustion. *Id.* at 1251-52. The BIA has noted that it is inappropriate for it to consider an issue not raised before the IJ. *See Matter of J-Y-C-*, 24 I. & N. Dec. 260, 261 n.1 (BIA 2007). The BIA will not engage in factfinding on appeal. 8 C.F.R. 1003.1(d)(3)(iv).

As an initial matter, we lack jurisdiction to consider Huang's claim that he established past persecution based on an imputed political opinion, because he did not sufficiently raise the issue before the BIA or the IJ; thus, it is unexhausted. *See Amaya-Artunduaga*, 463 F.3d at 1250. The BIA's discussion of Huang's imputed political opinion claim does not change the result, because the BIA's *sua sponte* discussion of an issue is insufficient to amount to exhaustion. *See id.* at 1251-52.

While Huang raised the claim that he suffered persecution on account of his membership in a particular social group before the BIA, it is also unexhausted: he

7

failed to raise the claim before the IJ.  Although exhaustion usually concerns the failure to raise a claim before the BIA, the exhaustion doctrine exists to give the agency a full opportunity to consider the claim; and it requires exhaustion of all available remedies.  This claim was not raised before the IJ because Huang never checked the box on his asylum application, and he never argued it before the IJ. Huang's failure to raise this claim before the IJ meant that he did not "avail himself" of all agency remedies, and he did not give the BIA a full opportunity to consider his claim since the BIA cannot address an issue for the first time on appeal or engage in factfinding.  *See J-Y-C-*, 24 I. & N. Dec. at 261 n.1; 8 C.F.R. 1003.1(d)(3)(iv).  Huang contends that the IJ considered the claim that Huang suffered persecution on account of his membership in a particular social group because the IJ stated that he failed to show that his mistreatment related "to his political opinion, or any other protected ground[,]"; this contention lacks merit. Exhaustion is based on what the petitioner raises and not what the agency addresses *sua sponte*.  *Cf. Amaya-Artunduaga*, 463 F.3d at 1251-52.

Substantial evidence supports the IJ's and the BIA's determination that the mistreatment Huang suffered was not politically motivated.  In fact, Huang's testimony before the IJ illustrated that he suffered harm not because of particular political beliefs, but because he did not want to give up his family's land to the government.  Therefore, this case is like *Rodriguez Morales*, 488 F.3d at 886, and

8

*Cardona Rivera*, 487 F.3d at 818, where the petitioners failed to establish a sufficient nexus between their political opinion and the alleged persecution the petitioners suffered when they personally refused to cooperate with a guerilla group.

Huang's incident involved a personal dispute with the government, where he was beaten for trying to stop his home's demolition, not for his taking a general political stance against corruption. Nor was the genesis of that dispute political, as Huang's home was not targeted for demolition because of his politics, but because it lay in the path of a road project. Huang also did not attempt to petition the Chinese government about the demolition of his home or other people's homes. Given this kind of evidence, the record does not compel a finding that Huang's political opinion was a reason for his mistreatment. *See Cardona Rivera*, 487 F.3d at 821.

Furthermore, substantial evidence supports the determination that the harm Huang suffered did not rise to the level of persecution. Huang testified that he was beaten by government workers and that, as he tried to escape, he fainted. Based on Huang's testimony and medical records, Huang was taken to the hospital because he suffered bruises and cuts to his arm and knee, which required cleaning and stitches. He also states in his brief that he suffered a broken knee, but that injury was not supported by the record. Huang was released from the hospital on the

same day, was prescribed medication, and was advised to rest.  Although Huang suffered physical harm, the record fails to compel a finding that his mistreatment met the "extreme" threshold level of persecution.  *See, e.g.*, *Djonda*, 514 F.3d at 1174.  Huang stated that he lost his home, he had to move in with a friend, he did not live with his mother anymore, his family could not farm anymore, and the government did not provide adequate compensation for their home.  Huang, however, did not lose his home because of resistance to the demolition order, and the record does not compel that this harm is the kind of economic harm that rises to the level of persecution.

Substantial evidence also supports the decision of the IJ and the BIA that Huang failed to demonstrate a well-founded fear of future persecution on account of a protected ground.  After being beaten, Huang testified that his mother told him that the officers from the village government were looking for him and that she advised him to go into hiding.  But Huang lived with a friend in another district after the demolition of his home without being harmed, and the officers never came to his friend's house looking for him.  Besides, the Chinese government has not sought to determine Huang's location since his leaving China; and his mother continues to live in China without incident.  Several of the newspaper articles submitted by Huang outlined the struggles of Chinese citizens who petitioned the central government but were beaten and jailed, and the Country Report discussed

violent property-related disputes between citizens and the government.

Nevertheless, Huang did not petition the central government, and the record does

not indicate that he is a major proponent or activist in the fight against the Chinese

government's taking of land.  Therefore, the record does not compel a finding that

Huang will be "singled out" for persecution on account of his political opinion.

*See Forgue*, 401 F.3d at 1286.

Huang could not prove his entitlement to asylum relief; he necessarily

failed to satisfy the more stringent standard that it was "more likely than not" that

he would be persecuted on account of a protected ground if he returned to China.

*See Sepulveda*, 401 F.3d at 1232-33 (discussing withholding of removal).

Furthermore, the record demonstrates that the IJ and the BIA addressed Huang's

withholding of removal claim; and the record does not compel a finding that

Huang established that it is "more likely than not" that he would be singled out for

persecution if he returned to China or that the Chinese government has a pattern or

practice of persecuting individuals similarly situated to Huang.  Moreover, the

record demonstrates that the IJ and the BIA addressed Huang's CAT claim; and

substantial evidence supports the finding that it is not "more likely than not" that

he would be tortured if he returned to China.

**PETITION DENIED.**

11