**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1283

_____

GEORGE AMOS MECHEO;
DAN MAGARA MECHEO; J.O. M.,

Petitioners

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A089-913-038; A089-913-039 & A089-913-040)
Immigration Judge: R.K. Malloy

_____

Submitted under Third Circuit LAR 34.1(a)
On March 31, 2022

Before:  RESTREPO, ROTH and FUENTES, <u>Circuit Judges</u>

(Opinion filed: February 17, 2023)

_____

O P I N I ON*

_____

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**ROTH**, <u>Circuit Judge</u>:

Lead Petitioner George Mecheo and his sons Dan and J.O.M., seek review of a final decision of the Board of Immigration Appeals (BIA) issued on January 13, 2021. In its decision, the BIA dismissed Petitioners' appeal from an Immigration Judge's (IJ) decision denying their applications for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture (CAT). Petitioners challenge the BIA's holding that there was no clear error in the IJ's credibility determination. They argue that the BIA and IJ failed to consider that Mecheo's story shifted because he was relying on information from third parties and was not in Kenya to witness events personally. They also argue that the BIA erred by 1) by rejecting their challenge to the IJ's CAT findings, 2) by relying on Kenyan law to conclude that J.O.M. would be entitled to dual citizenship without providing advance notice of this determination, and 3) by refusing to remand proceedings to the IJ for further consideration of Dan's independent application for asylum. Because these arguments are all without merit, we will deny the petition for review.

**I.**

Mecheo and his sons, Dan and J.O.M., are citizens of Kenya who were admitted to the United States on or about December 23, 2007, with authorization to remain in the United States for a temporary period ending June 20, 2008. Because they remained in the United States past June 20, 2008, the government initiated removal proceedings in October 2008. Petitioners originally appeared in removal proceedings on November 18,

2

2008 where they conceded removability. However, they sought asylum, withholding of removal, and CAT protections. At a 2010 merits hearing, the Lead Petitioner, Mecheo, testified that he was seeking asylum due to the 2007–08 Kenyan elections, claiming that a new political party had come into power and "attacked [his] family" and killed his father.[1] He explained that the people responsible for his father's death were members of the People's National Union (PNU) party and the Orange Democratic Party (ODM), while his family belonged to the "old regime," specifically the Kenya African National Union (KANU). He testified that he could not return to Kenya because he had no home to which he could return and that he believed his life would be in danger. Although Mecheo indicated that many members of his father's former political party, the KANU, were "internally displaced people," he acknowledged that he himself had never been involved in politics and he had not lived in Kenya for "a long time."[2]

Additionally, Mecheo testified that, before his arrival in the United States, he had been living and working in Trinidad and Tobago for seven years. However, he did not apply for citizenship there, as he did not want to live there long term even though his son, J.O.M., was born there. He testified that he could only return to Trinidad and Tobago if he got a new job there. Before living in Trinidad and Tobago, Mecheo had lived in Nairobi, Kenya, rather than in his ancestral homeland in the Kisii region in western Kenya, where his father had been murdered. Mecheo feared that, if he returned to Kenya, the same people who murdered his father would persecute or kill him. However, when

---

[1] Appx. 825, 828.
[2] *Id.* at 863–64.

asked if he could live safely in Nairobi, Mecheo stated that his family had no properties there and that he "[did not] want to live in a strange place."[3] He also claimed that there were people in Kenya who were still angry with his father because they believed that his father used government money to send Mecheo to India for an education.[4]

The IJ denied Petitioners' applications in an oral decision on March 18, 2010. The IJ specifically credited Mecheo's testimony regarding his father's position as community chief and councilor and the violence that took place after the December 2007 presidential elections. Nevertheless, the IJ found that it would be possible for Petitioners to relocate in Kenya because several of Mecheo's siblings continued to live in Kenya and had not faced harm. Petitioners appealed the IJ's decision, and the BIA remanded the case to the IJ. The BIA explained that remand would provide the IJ the opportunity to (1) assess whether, for purposes of internal relocation, the Lead Petitioner was "similarly situated" to his brother who safely lived in Kenya, and (2) to reconsider the Petitioners' possible "firm resettlement" in Trinidad and Tobago.[5] Finally, the BIA determined that remand would allow the IJ to consider additional factors concerning Mecheo's ability to safely relocate, including the fact that he was his father's eldest son (which suggested that he was not similarly situated to his siblings), and the evidence that some members of his father's KANU party remain loyal to the party so that "the risk remains that [Lead

---

[3] Appx. at 867–68.
[4] Appx. at 869.
[5] Appx. at 633.

Petitioner] may be targeted due to his father's KANU activities."[6]  However, after the BIA's remand, Petitioners failed to appear for their hearing scheduled for May 29, 2012.

The IJ conducted the proceedings *in absentia* and concluded that, because Petitioners were notified of the hearing through their counsel of record and failed to appear, they should be ordered removed from the United States.  Subsequently, however, Petitioners' proceedings were reopened, and Mecheo reappeared in Immigration Court on September 14, 2016.  The motion to reopen was based on a claim to "ancestral land" in Kenya that "other family members [were] seeking to disrupt."[7]  Counsel further explained that these family members had "threatened [Mecheo's] life on account of wanting to possess that land" and that "his mother was killed in a separate land dispute by others in the community."[8]

At the merits hearing held on July 31, 2017, Mecheo testified that, although he previously believed that his father's murder was politically motivated, he had since learned that it was the result of "animosity towards [his] family based on the fact that [his] father came . . . from a polygamist family" and, because his father was the "first-born," he had a right to inherit significant property from his grandfather.[9]  Mecheo claimed that his grandfather's other family attacked his father in an attempt to acquire the land that Mecheo's father had inherited as the eldest son.

---

[6] Appx. at 633.
[7] Appx. at 278.
[8] Appx. at 278.
[9] Appx. at 324.

5

Mecheo testified that, after his father died, the lands were supposed to pass to him, that his mother was the "custodian" of the property in his absence, and that she was "attacked" as a result.[10]  He explained that, according to his brother, his mother was attacked by individuals who wanted the land and that politics was merely a pretext for the attack.  One of his mother's legs was "chopped," but she survived.[11]  Mecheo then testified that nothing else happened to his mother until 2012, when she was attacked again, and this time, she was killed.

Additionally, Mecheo stated that one of his brothers left Kenya for Tanzania in 2015, after that brother was threatened with harm by "people who c[a]me from the chief's office" because his brother wanted to cultivate his family's land and they wanted the land to stay "idle."[12]  Mecheo stated that he feared removal because he believed that the same people who killed his parents would kill him if he went back to Kenya.  He also said that he could not simply forego his inheritance and live somewhere else because it is inherited ancestral land and his son is entitled to it eventually.  Mecheo explained that, if he did not claim the land, he would be viewed as an "outcast" among the Kisii people.[13]

Mecheo claimed that his first-born son, Dan, would also be in danger because he was the next in line to inherit the land.  However, Mecheo admitted that he did not know who among his uncles would be inclined to harm him because he had not been there "for

---

[10] Appx. at 352.
[11] Appx. at 355–56.
[12] Appx. at 363–64.
[13] Appx. at 370.

6

a long time."[14]  Mecheo was also concerned about his son J.O.M. because he was born in Trinidad, and Mecheo was not sure that Kenyan law allowed for dual citizenship.  The IJ issued a written decision on October 4, 2018, denying Petitioners' applications for relief and protection from removal.

As a threshold matter, the IJ concluded that Mecheo was not credible, explaining that "[his] testimony [was] riddled with serious discrepancies[,]" and that the factual claims in support of his application "have changed drastically over the last ten years."[15]  Regarding the separate claims of Mecheo's sons, Dan and J.O.M., the IJ noted that, because Dan's application involved the same land dispute claim as his father, which the IJ had deemed not credible, Dan's claim was likewise not credible.  To the extent that Mecheo asserted that J.O.M. would be persecuted because he would be denied dual citizenship in Kenya, the IJ concluded his assertion was "incorrect" given that Kenya's constitution allowed for dual citizenship, and further, Mecheo had presented no evidence that dual citizens "are ill-treated in any manner."[16]  Finally, the IJ concluded that Petitioners failed to meet their burdens of proof for protection under the CAT.

Petitioners appealed to the BIA, and the BIA affirmed the IJ's decision and dismissed the appeal on January 13, 2021.

## II.

The BIA exercised jurisdiction under 8 C.F.R. § 1003.1(b)(3), which grants it

---

[14] Appx. at 375–76.
[15] Appx. at 125.
[16] Appx. at 128.

authority to review the decisions of IJs in removal proceedings. We have jurisdiction to review final orders of the BIA under 8 U.S.C. § 1252(a)(1). We review factual findings—including findings relating to a noncitizen's alleged fear of persecution—under the substantial evidence standard.[17] Under this standard, "[t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'"[18]

## III.

Petitioners seek review of several of the BIA's determinations: First, the BIA's decision to sustain the IJ's adverse credibility determination; second, the finding that Petitioners failed to demonstrate a clear probability of being tortured in Kenya, by or with the acquiescence of the government; third, the determination that J.O.M. was a Kenyan citizen and, because of his birth in Trinidad and Tobago, would not be persecuted or tortured if he returned to Kenya with his family; and, finally, the determination that the IJ properly denied Dan's request for remand to allow the IJ to adjudicate his protection claims independently of those Mecheo raised.

## A.

---

[17] *See Sandie v. Att'y Gen.*, 562 F.3d 246, 251 (3d Cir. 2009) ("We review factual findings, including findings of persecution and fear of persecution, under the substantial evidence standard.").

[18] *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations omitted); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) ("To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it.") (emphasis in original).

We hold that the record supports the BIA's conclusion that Mecheo failed to provide credible testimony in support his and his sons' applications for asylum, withholding of removal, and CAT protection. IJ's make adverse credibility determinations by looking at the "totality of the circumstances."[19] Importantly, a factual finding is not "clearly erroneous" merely because there are two permissible views of the evidence.[20] We give deference to the IJ, as the IJ "alone is in a position to observe an alien's tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence."[21] We have held that inconsistent statements and contradictory evidence are cogent reasons that support an adverse credibility determination.[22] Here, the IJ supported her adverse credibility finding with specific, cogent reasons, and the record amply supports the IJ's conclusion.

Although Mecheo argues that the BIA failed to consider the fact that his testimony changed due to his prolonged absence from Kenya, and was based on the evolving information that Mecheo received from those in Kenya, that argument is unpersuasive. As the BIA correctly explained, Mecheo never articulated this argument to the IJ, and, in any case, the IJ was not obligated to accept his post-hoc excuses for these vastly different

---

[19] 8 U.S.C. § 1158(b)(1)(B)(iii).

[20] *In Re J-Y-C-*, 24 I&N Dec. 260, 263 (BIA 2007).

[21] *Alimbaev v. Att'y Gen. of United States*, 872 F.3d 188, 196 (3d Cir. 2017) (cleaned up).

[22] *See Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (citing *Matter of S-M-J-* (Interim Decision), 21 I&N Dec. 722, 729 (BIA 1997)); *see also Tarrawally v. Ashcroft*, 338 F.3d 180, 187 (3d Cir. 2003) (noting that "although some minor discrepancies" between petitioner's affidavit and testimony "might be understandable," petitioner's "irreconcilable, contradictory assertions" supported the IJ's adverse credibility determination).

accounts of what happened to his family and why. Ultimately, Mecheo's unsupported arguments are not enough for us to find that the IJ was compelled to credit his testimony.[23]

Because the adverse credibility finding is dispositive of Petitioners' claims for asylum and withholding of removal, the BIA properly declined to address the IJ's additional findings related to those applications.[24]

**B.**

Additionally, we hold that substantial evidence supports the BIA's conclusion that the Petitioners failed to demonstrate a clear probability of being tortured in Kenya, by or with the acquiescence of the government. Mecheo's argument that the agency overlooked certain evidence, especially evidence regarding torture of his family members, is unpersuasive. Even if we were to credit Mecheo's inconsistent accounts of past family member torture, the IJ, as affirmed by the BIA, found that the evidence did not show that the Kenyan government was "willfully blind" to torture or killings carried

---

[23] *See Sunuwar v. Att'y Gen.*, 989 F.3d 239, 247 (3d Cir. 2021) (explaining that a petitioner challenging an adverse credibility finding "based on inconsistencies in his testimony, or between his testimony and other evidence" must offer more than "a plausible explanation for his inconsistent statements . . . ; he must demonstrate that a reasonable fact-finder would be compelled to credit his testimony") (internal quotation marks and citation omitted).

[24] *See Dia*, 353 F.3d at 247 (stating that "An alien's credibility, by itself, may satisfy his burden, or doom his [asylum] claim"); *see also Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003) ("If [a petitioner] is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal. . . ."); *Muhanna v. Gonzales*, 399 F.3d 582, 589 (3d Cir. 2005) (explaining that an applicant's credibility may alone "doom his [CAT] claim").

out as the result of land disputes between relatives.[25] In fact, the IJ found that the evidence showed that the Kenyan police responded to and investigated attacks.

Furthermore, Mecheo fails to cite any evidence that compels the conclusion that he cannot safely and reasonably relocate within Kenya.[26] The record confirms that Mecheo resided in Nairobi without incident for over two years, and nothing suggests that he could not again reside in Nairobi without incident. Accordingly, we agree with the BIA that the Petitioners failed to demonstrate a clear probability of torture, by or with the acquiescence of the Kenyan government.

## C.

The BIA also properly relied on Petitioners' failure to proffer any evidence (other than Mecheo's own dubious testimony) indicating that children born outside of Kenya were likely to be tortured in Kenya. As we have repeatedly explained, "an applicant . . . bears the burden of proving through objective evidence that 'it is more likely than not' that s/he would be 'tortured' in the country to which the applicant would be removed."[27] Mecheo (and not the IJ) bore the burden of supporting his and his sons' theories of relief.

## D.

Finally, the BIA properly declined to remand Petitioners' case for the IJ to reconsider Dan's asylum application. As the BIA correctly noted, Dan—with the

---

[25] Appx. 130.

[26] *See* 8 C.F.R. § 1208.16(c)(3)(ii) (providing that, in assessing the likelihood of future torture, the agency considers, inter alia, "Evidence that the applicant could relocate to another part of the country . . . where he or she is not likely to be tortured.").

[27] *Obale v. Att'y Gen.*, 453 F.3d 151, 161 (3d Cir. 2006) (citing *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004)); 8 C.F.R. § 1208.16(c)(2).

assistance of counsel—did file an independent asylum application. He was also free to testify and raise any "independent claims for relief he believed were meritorious."[28] However, he failed to do so, and there is no evidence that he could not testify or offer evidence in support of his own claim until he turned eighteen. Regardless, given that Dan's asylum claim turns on his supposed entitlement to his family's ancestral land as the first-born son, and that this claim is tied directly to his father's claim that the BIA properly deemed was not credible, Dan is unable to show how a remand for an additional hearing would change the result of this case.[29] Petitioners have never been able to identify what evidence or argument Dan was unable to present in the proceedings below. Accordingly, it was not arbitrary for the BIA to deny the request for remand.

## IV.

For the foregoing reasons, we will deny the petition for review.

---

[28] Appx. at 6–7.

[29] *See Matter of S-Y-G-,* 24 I&N Dec. 247, 251–52 (BIA 2007) (reiterating that "the applicant must meet the heavy burden of showing that, if proceedings . . . were reopened . . . the new evidence offered would likely change the result in the case") (internal quotation marks and citations omitted); *see also INS v. Abudu*, 485 U.S. 94, 107–10 (1988) (explaining that the movant faces a "heavy burden" as a motion to reopen is analogous to a motion for a new trial in a criminal case on the basis of newly discovered evidence).