**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NIRMAL SINGH,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney General,

*Respondent.*

No. 08-70434

Agency No.
A099-330-446

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
July 8, 2009—Seattle, Washington

Filed April 19, 2010

Before: Diarmuid F. O'Scannlain, Andrew J. Kleinfeld and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge O'Scannlain;
Dissent by Judge Berzon

## COUNSEL

Taranjeet Kaur Buttar, Buttar & Cantor, LLP, Tukwila, Washington, argued the cause for the petitioner. Patrick Cantor, Buttar & Cantor, LLP, Tukwila, Washington, was on the brief.

Rebecca Ariel Hoffberg, U.S. Department of Justice, Washington, District of Columbia, argued the cause for the responi

dent. Gregory Katsas, Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, District of Columbia; William C. Peachey, Assistant Director, Office of Immigration Litigation, U.S. Department of Justice, Washington, District of Columbia; and Mona Maria Yousif, Civil Division, U.S. Department of Justice, Washington, District of Columbia, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether an immigration judge properly required corroborating evidence from an otherwise credible witness in an asylum hearing.

### I

### A

Nirmal Singh is an Indian citizen and former resident of that nation's Punjab state. Singh maintains that as a result of his political activities and affiliation, he was arrested and tortured on four occasions. According to Singh, after his fourth confrontation with authorities, a police officer told him: "If you want to save your life, leave India." Singh claims that shortly thereafter, he took the officer's advice and fled to Canada. Singh asserts that he arrived in Canada, using a false passport, on October 10, 2004. He says he stayed there for ten days before entering the United States without inspection on October 20, 2004. In the fall of 2005, Singh filed for asylum.[1]

---

[1]Singh contends that he filed for asylum on October 13, 2005, within one year from his alleged date of entry into this country (October 20, 2004). He submits his asylum application as proof, noting that the time stamp on the application reads October 13, 2005. That date, however, is crossed out by hand, and a date of November 14, 2005, is stamped next

B

On January 18, 2006, Singh was issued a Notice to Appear. At his hearing before an Immigration Judge ("IJ"), Singh conceded his removability and sought asylum, withholding of removal, and protection under the Convention Against Torture.

The IJ rejected Singh's request for asylum as untimely filed. Though he made no adverse credibility finding, the IJ found Singh's testimony insufficient to establish his last date of entry into the United States "by clear and convincing evidence." In so ruling, the IJ noted that Singh had provided no documentation corroborating his claim that he entered this country on October 20, 2004.**²** Without an established date of entry, Singh could not prove that he filed his application "within 1 year after the date of [his] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B).

Singh appealed to the Board of Immigration Appeals ("BIA"), which likewise concluded that his application was time-barred because he had failed to establish his date of entry. Quoting the text of 8 U.S.C. § 1158(b)(1)(B)(ii), the BIA explained that such section "specifically provides that, in determining whether an asylum applicant has met his burden

to it. Singh claims this indicates that when he first submitted the application, it contained a defect which had to be remedied. According to Singh, November 14 is the date he resubmitted the application after correcting the error.

**²**The IJ also based his time-bar ruling on the date stamp issue, *see supra* note 1, concluding that Singh's asylum application was filed on November 14, 2005. Thus, even if Singh had established his date of entry as October 20, 2004, his application would still be untimely.

However, the Board of Immigration Appeals affirmed the IJ on the ground that Singh failed to corroborate his arrival date. In reviewing this petition, "we consider only the grounds relied upon" by the BIA. *See Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam).

of proof, the trier of fact may require an applicant to 'provide evidence that corroborates otherwise credible testimony.' " Ultimately, the BIA held that Singh's failure to provide such evidence was fatal to his application.

Singh timely petitioned this court for review.

## II

We only address the timeliness of Singh's application in this opinion.[3] Singh contends that for various reasons, the BIA improperly concluded that he failed to meet the one-year deadline. The government counters by asserting that this court has no jurisdiction to review the BIA's time-bar ruling, and, in the alternative, that Singh's application was properly found to be untimely.

## A

We must first assess whether we have jurisdiction to review the BIA's timeliness determination. "Any alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum . . . ." 8 U.S.C. § 1158(a)(1). However, an alien can only avail himself of this provision if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." *Id.* § 1158(a)(2)(B). Section 1158(a)(3) states that "[n]o court shall have jurisdiction to review any determination of the Attorney General under [section 1158(a)(2)(B)]." Read together, these provisions appear to deprive this court of jurisdiction over determinations that an alien failed to file his application within one year of entering this country. *See Hakeem v. INS*, 273 F.3d 812, 815 (9th Cir. 2001) ("Thus,

---

[3]Singh's request for withholding of removal and relief under the Convention Against Torture is addressed in a memorandum disposition filed concurrently with this opinion.

under section 1158(a)(3), we lack jurisdiction to review the IJ's determination that [the applicant] failed to file his asylum application within one year of his arrival in the United States.").

**[1]** Nonetheless, "the Real ID Act of 2005 restores [our] jurisdiction over 'constitutional claims or questions of law.' " *Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007) (per curiam) (quoting *Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 587 (9th Cir. 2005)); *see also* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in . . . any other provision of this chapter . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."). Legal questions include questions of statutory construction and "questions involving the application of statutes or regulations to undisputed facts, sometimes referred to as mixed questions of fact and law." *Ramadan*, 479 F.3d at 650. Thus, to secure jurisdiction, we must determine whether Singh has raised a question of statutory construction or a question involving the application of a provision of law to "undisputed facts."

**[2]** Singh's argument is legal, not factual. He claims that because his testimony was deemed credible, the agency committed a legal error by requiring corroboration. In his view, credible testimony is necessarily sufficient to meet the clear and convincing standard, and corroboration cannot be required. Because this is a legal argument about how to construe 8 U.S.C. § 1158(b)(1)(B)(ii), and not a factual argument about whether the evidence in his case proved his date of entry, we have jurisdiction to review it.[4]

---

[4]The government asserts that we lack jurisdiction because Singh's date of entry is not an "undisputed" fact. If Singh's challenge involved a mixed question of law and fact, such arguments would be persuasive. *See Ramadan*, 479 F.3d at 650 (explaining that mixed questions of law and fact involve "the application of statutes or regulations to undisputed facts"). We conclude, however, that insofar as Singh claims the agency employed the wrong burden of proof by requiring corroboration, he raises a "pure" question of law.

B

Singh claims that the IJ had no authority to require corroborating evidence from a credible witness. If the IJ does possess such authority, we must then determine if it was properly exercised in this case.

1

**[3]** In the past, "[i]t [was] well established in this circuit that the BIA may not require independent corroborative evidence from an asylum applicant who testifies credibly in support of his application." *Kataria v. INS*, 232 F.3d 1107, 1113 (9th Cir. 2000); *see also, e.g.*, *Singh v. Gonzales*, 491 F.3d 1019, 1025 (9th Cir. 2007) (same); *Kaur v. Ashcroft*, 379 F.3d 876, 889-90 (9th Cir. 2004) (same); *Ladha v. INS*, 215 F.3d 889, 901 (9th Cir. 2000) ("[A]n alien's testimony, if unrefuted and credible, direct and specific, is sufficient to establish the facts testified without the need for any corroboration."), *overruled on other grounds by Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir. 2009) (en banc).

**[4]** With respect to asylum applications filed after May 11, 2005,[5] however, this is no longer true. As we have previously held in *Aden v. Holder*, "Congress abrogated these holdings in the REAL ID Act of 2005." 589 F.3d 1040, 1044 (9th Cir. 2009). It is still true that credible testimony can, in some circumstances, sustain the applicant's burden of proof. *See* 8 U.S.C. § 1158(b)(1)(B)(ii) ("[T]he testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the

---

[5]REAL ID Act of 2005, Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305; *Oyekunle v. Gonzales*, 498 F.3d 715, 717 (7th Cir. 2007) ("For aliens who applied for asylum after May 11, 2005[, the REAL ID Act] in effect codifies the [corroboration] rule . . . .").

applicant is a refugee."). But the Act further provides that '[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* Thus, credible testimony *may* be sufficient to satisfy the applicant's burden of proof, but the Act also enables the trier of fact to require something more. Uncorroborated testimony is sufficient only if "(1) the applicant's testimony is credible; (2) the applicant's testimony is persuasive; and (3) the applicant's testimony refers to facts sufficient to demonstrate refugee status. Credible testimony is not by itself enough." *Aden*, 589 F.3d at 1044. To the extent our prior decisions hold to the contrary, they are superseded by the REAL ID Act. *Id.*

**[5]** Thus, in the case at hand, Singh is correct that insofar as the IJ made no adverse credibility finding, we must credit him as truthful. *See Kataria*, 232 F.3d at 1113. We need not accept all *facts* to which he testifies as true, however. *Aden*, 589 F.3d at 1045. After the REAL ID Act, "the IJ may, in determining whether it satisfies the applicant's burden of proof, 'weigh the credible testimony along with other evidence of record.' " *Id.* at 1044 (quoting 8 U.S.C. § 1158(b)(1)(B)(ii)). "Congress has installed a bias toward corroboration in the statute to provide greater reliability." *Id.* at 1045. Thus, we must conclude that the IJ possessed the authority to require corroborating evidence.

2

Our conclusion that the IJ may require corroborating evidence despite credible testimony does not end the matter, however. Singh contends that because he "could not reasonably be expected to provide proof of when he entered the United States . . . . [t]he BIA and the IJ committed error in [their] application of the REAL ID Act as it pertains to [him]." As we conclude that the IJ properly demanded corrob-

orating evidence despite Singh's otherwise credible testimony, we reject Singh's contention.

We note at the outset that we do not write on a clean slate as we interpret section 1158(b)(1)(B)(ii). The BIA has interpreted this section as codifying its preexisting corroboration requirements. *See In re J-Y-C-*, 24 I & N Dec. 260, 263 (B.I.A. 2007). "When reviewing an agency's interpretation of its governing statute, we follow the two-step framework famously set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)." *Marmolejo-Campos v. Holder*, 558 F.3d 903, 908 (9th Cir. 2009) (en banc). Precedential BIA decisions interpreting the Immigration and Nationality Act fall under this rubric. *Id.* at 908-09 (citing *United States v. Mead Corp.*, 533 U.S. 218, 233 (2001)); *see also Ramos-Lopez v. Holder*, 563 F.3d 855, 858-59 (9th Cir. 2009) ("Generally, we accord *Chevron* deference where there is binding agency precedent on-point (either in the form of a regulation or a published BIA case)." (internal quotation marks, alternation, and citation omitted)).[6]

We thus consider "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If the statutory provision at issue "is 'silent or ambiguous,' however, we may not supply the interpretation of the statute we think best . . . , but must limit ourselves to asking 'whether the agency's answer is based on a permissible construction of the statute.' " *Marmolejo-Campos*, 558 F.3d at 908 (quoting *Chevron*, 467 U.S. at 843).

---

[6]The BIA decided the case at hand in an unpublished order. However, it relied upon its interpretation of section 1158(b)(1)(B)(ii) as detailed in *In re J-Y-C-*, 24 I. & N. Dec. 260 (B.I.A. 2007). "[W]e apply *Chevron* deference regardless of whether the order under review is the precedential decision itself or a subsequent unpublished order that relies upon it." *Marmolejo-Campos*, 558 F.3d at 911.

**[6]** With section 1158(b)(1)(B)(ii), Congress has expressly empowered the IJ to require corroborating evidence even when the applicant has provided otherwise credible testimony. Should the applicant fail to offer corroboration, the IJ may conclude that despite the applicant's credible testimony, he has failed to meet his burden of demonstrating that he is entitled to asylum relief. Accordingly, the IJ's conclusion that Singh's uncorroborated testimony was insufficient to carry his burden to prove his date of entry was proper.

**[7]** Our dissenting colleague contends that the IJ erred by failing to give Singh notice that his testimony required corroboration before concluding that he had failed to meet this burden. According to the dissent, section 1158(b)(1)(B)(ii) mandates a three-step process.[7] Dissent at 5748-49. In the first step, an IJ must determine whether an applicant's uncorroborated testimony is insufficient to carry his burden. In the second step, the IJ must identify the portions of the applicant's testimony that require corroboration. In the third step, the IJ must give the applicant an opportunity to provide that corroboration or an explanation for its absence. This interpretation is belied by the statute's text, which omits any reference to such a procedure. As we explained in *Aden v. Holder*, by enacting section 1158(b)(1)(B)(ii), Congress has made immigration litigation more like other litigation, where parties with

---

[7]In addition, the dissent asks us to bifurcate another part of the IJ's analysis. Although section 1158(b)(1)(B)(ii) provides the standard under which an IJ assesses an asylum applicant's credibility, the dissent argues that the IJ should have evaluated the credibility of Singh's claim that he filed his asylum application within a year of entering the United States under 8 U.S.C. § 1229a(c)(4)(B). Dissent at 5746-48. We disagree. Under the dissent's approach, which was neither raised nor briefed by the parties, an IJ would be forced to assess an asylum applicant's credibility with respect to threshold matters (such as his date of entry) under section 1229a(c)(4)(B) and assess his credibility with respect to substantive matters (such as his well-founded fear of persecution) under section 1158(b)(1)(B)(ii). We see no evidence that the REAL ID Act bifurcates an IJ's credibility determination in this way, and accordingly reject this interpretation.

the burden of proof ordinarily provide whatever corroboration they have when presenting their case in chief. 589 F.3d at 1045. Thus, just as a plaintiff in a car accident case provides the body shop invoice and his medical records to corroborate his damages claims, an applicant in an asylum case is now expected to provide evidence corroborating the factual assertions underlying his claim for relief. *See id.* Thus, while the statute *permits* an IJ to give an applicant notice that his testimony requires corroboration, it does not *require* that he do so. *See Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir. 2008). We accordingly reject the dissent's interpretation.

Moreover, we are not at liberty simply to impose the dissent's interpretation of the statute on the BIA. Even if the statute were ambiguous, we would only need to determine "whether the agency's [interpretation] is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Because the BIA has exercised its authority to interpret section 1158(b)(1)(B)(ii), its decision "governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 129 S. Ct. 1498, 1505 (2009).

The BIA has held that by "adding the provisions regarding corroboration, Congress intended to codify the BIA's corroboration standards" contained in *In re S-M-J-*. *In re J-Y-C-*, 24 I. & N. Dec. at 263 (internal quotation marks, alterations, and citation omitted); *see also Rapheal*, 533 F.3d at 527 (concluding that the REAL ID Act "codified" the corroboration rule of *In re S-M-J-*).[8] These standards state that "where it is reason-

---

[8]The BIA relied heavily on legislative history to reach this result. *See In re J-Y-C-*, 24 I. & N. Dec. at 263 (citing H.R. Rep. No. 109-72, at 165-66 (2005) (Conf. Rep.)). The conference report cited by the agency quotes extensively from *In re S-M-J-*, and expresses the desire that "the standards in *Matter of S-M-J-* . . . will guide the BIA and the courts in interpreting" section 1158(b)(1)(B)(ii). *See* H.R. Rep. No. 109-72, at 166.

able to expect corroborating evidence," the applicant should provide either the evidence "or an explanation of why she did not provide [it]." *In re S-M-J-*, 21 I. & N. Dec. 722, 725 (B.I.A. 1997). Therefore, " 'an asylum applicant should provide documentary support for material facts which are central to his or her claim and easily subject to verification . . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet [his] burden of proof.' " *In re J-Y-C-*, 24 I. & N. Dec. at 263 *(alterations in original) (quoting In re S-M-J-*, 21 I. & N. Dec. at 725-26). As this "is certainly a plausible interpretation of the statute," *Entergy Corp.*, 129 S. Ct. at 1505, it is entitled to deference.

**[8]** Accordingly, where it is reasonable to expect an applicant to provide documentary support for material facts which are central to his claim and easily subject to verification, the applicant should provide either the evidence or an explanation of why she did not provide it. *See In re J-Y-C-*, 24 I. & N. Dec. at 263 (citing *In re S-M-J-*, 21 I. & N. Dec. at 725-26); *see also Balachandran v. Holder*, 566 F.3d 269, 273 (1st Cir. 2009) ("[I]t was reasonable to expect [the applicant] to secure corroboration from his family in Canada."); *Krishnapillai v. Holder*, 563 F.3d 606, 619 (7th Cir. 2009) ("[There was] no error in the Immigration Judge's expectation that [the applicant] produce additional evidence to corroborate his account of past persecution. . . . It was not unreasonable for the judge to look for corroboration from [the applicant's] wife in particular . . . ."); *Sandie v. Att' Gen.*, 562 F.3d 246, 252 (3d Cir. 2009) ("[A]n applicant for asylum must provide reliable evidence to corroborate testimony when it is reasonable to expect corroborating evidence and there is no satisfactory explanation for its absence. It is reasonable to expect corroboration for testimony that is central to an applicant's claim and easily subject to verification." (citation omitted)); *Khan v. Mukasey*, 541 F.3d 55, 58 (1st Cir. 2008) ("Where the alien's testimony is not itself compelling the absence of easily obtainable corroborating documentation can be the final straw. The BIA correctly recognized that a lack of corroborating evidence

could be fatal to [the applicant's] case." (internal quotation marks and citation omitted)).

As we explained above, this does not mean asylum applicants must provide corroborating evidence to carry their burden of proof: credible testimony alone may still suffice. *See Aden*, 589 F.3d at 1044. However, as the IJ maintains "substantial leeway" to require corroboration—the absence of which " 'can lead to a finding that an applicant has failed to meet [his] burden of proof' "—applicants are well advised to provide it. *See In re J-Y-C-*, 24 I. & N. Dec. at 263 (quoting *In re S-M-J-*, 21 I. & N. Dec. at 725-26); *see also Aden*, 589 F.3d at 1044-45. We also stress that corroboration may only be required where "it is reasonable to expect" such evidence. *Aden*, 589 F.3d at 1044-45. IJs are not to place unreasonable demands on an asylum applicant.[9] *Id.*

[9] Turning to the case at hand, we have little difficulty concluding that because an essential element of all asylum claims is that they be "filed within 1 year" of the alien's arrival in the United States, 8 U.S.C. § 1158(a)(2)(B), an applicant's date of entry is a " 'material' " fact " 'central' " to his claim, *In re J-Y-C-*, 24 I. & N. Dec. at 263 (quoting *In re S-M-J-*, 21 I. & N. Dec. at 725-26). This is the sort of fact which is " 'easily subject to verification,' " whether by some form of official documentation or by supporting documents of a more informal variety, i.e., affidavits or letters from family, friends, or traveling companions. *Id.* Travelers typically accumulate paper as they move, such as receipts from gas stations,

---

[9]Although Singh himself raises no constitutional arguments, the dissent claims that the BIA's interpretation of the statute raises Fifth Amendment concerns. Dissent at 5753-54. Although we have previously expressed due process concerns when an IJ demanded corroborating evidence but did not provide an asylum applicant with an opportunity to produce that evidence, *see Marcos v. Gonzales*, 410 F.3d 1112, 1118 n.6 (9th Cir. 2005), we do not believe those concerns are implicated here. The statute provides an asylum applicant with sufficient notice that an IJ may require corroboration of his testimony even if he is credible.

motels, and restaurants, and often take snapshots providing dating information, and reaching a refuge from persecution might well generate a particular desire to preserve souvenirs of arrival. Accordingly, it is eminently "reasonable to expect" an applicant to provide some corroborating evidence of his date of entry. *In re S-M-J-*, 21 I. & N. Dec. at 725.

**[10]** This is especially true in the case at hand, where Singh was explicitly informed by an immigration officer that he had failed to establish his date of entry and that his lack of corroborating documents contributed to that failure. The need for adequate documentation was further emphasized by the IJ at an initial hearing, when he advised Singh's counsel "to bring whatever documents in the original form that he has to court with him."[10] Yet in response to queries from opposing counsel during his testimony before the IJ, Singh admitted to having no documents to corroborate his claim that he entered this country on October 20, 2004.[11] Singh made the same admission to this court.

In any case, "the REAL ID Act clearly states that corroborative evidence may be required, placing immigrants on notice of the consequences for failing to provide corroborative evidence." *Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir. 2008).

> To hold that a petitioner must receive additional notice from the IJ and then an additional opportunity to provide corroborative evidence before an adverse ruling, would necessitate two hearings—the first to decide whether such corroborating evidence is

---

[10]This statement was immediately preceded by a reference to the "one year bar." A fuller understanding of the context is obscured by an "(Indiscernible)" notation in the record.

[11]Singh initially claimed to have a letter corroborating his date of entry. That letter says nothing about when he entered the United States; it only indicates that he stayed at a particular temple in India in August 2004.

required and then another hearing after a recess to allow the alien more time to collect such evidence.

*Id.* We agree with the Seventh Circuit that "[t]his would add to the already overburdened resources of the [Department of Homeland Security], and such an approach would seem imprudent where the law clearly notifies aliens of the importance of corroborative evidence." *Id.*

[11] As Singh admitted that he had no documents to corroborate his date of entry, it was his burden to provide "an explanation of why [ ]he did not provide such . . . evidence." *In re S-M-J-*, 21 I. & N. Dec. at 725; *see also id.* at 730 ("Further, the applicant has not provided any explanation for the lack of information on these issues.").[12] Aside from his bald assertion that he "could not reasonably be expected to provide proof of when he entered the United States," however, the record is devoid of any indication from Singh as to why he was unable to corroborate such a basic fact. Contrary to his contention, "[t]here is nothing in the nature of [Singh's] claims that would compel us to find that corroborating evidence was unavailable to him." *Eke v. Mukasey*, 512 F.3d 372, 381 (7th Cir. 2008); *Chhay v. Mukasey*, 540 F.3d 1, 7 (1st Cir. 2008) ("Nothing offered by the petitioner compels us to conclude that . . . she could not readily have obtained some corroborating evidence as to her claimed party member-

---

[12]We note that the Third Circuit has cited its own decision in *Abdulai v. Ashcroft*, 239 F.3d 542 (3d Cir. 2001) (interpreting *In re S-M-J-*), to require the IJ to give the applicant notice of what aspects of his testimony require corroboration and the opportunity to explain the absence of such evidence. *See, e.g.*, *Sandie*, 562 F.3d at 253. Such requirements are in tension with the fact that Congress has placed the burden of proof on the applicant in asylum proceedings. 8 U.S.C. § 1158(b)(1)(B). Morever, neither *In re S-M-J-* nor *Abdulai* contain language to that effect. The requirements of *In re S-M-J-* have been described above. *See supra* pp. 5739-42. *Abdulai* only states that when handing down its opinion, the *BIA* must identify, for purposes of judicial review, the particular "aspects of [the applicant's] testimony it would have been reasonable to expect him to have corroborated." 239 F.3d at 554.

ship."); *cf.* 8 U.S.C. § 1252(b)(4) ("No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable."). Establishing one's date of entry does not require, for example, "corroboration from [a] persecutor," *In re S-M-J-*, 21 I. & N. Dec. at 725, or documentation from an unfriendly government, *cf.*, *Khan*, 541 F.3d at 58. As we discussed above, various "different kinds of materials might have served as corroborating evidence" of Singh's date of entry; "it was [his] failure to present" such material or an explanation for its absence "that undermined his case in the IJ's eyes." *Eke*, 512 F.3d at 381.

**[12]** Without either corroborating evidence of Singh's date of entry or an explanation for this deficiency, we have no choice but to conclude that the IJ did not err in barring Singh's application as untimely.[13]

### III

Accordingly, Singh's petition for review with respect to his asylum claim is

**DENIED.**

---

BERZON, J., dissenting:

I respectfully dissent from the majority's conclusion that the Board of Immigration Appeals ("BIA") properly interpreted and applied the appropriate corroboration provision in this case.

---

[13]We note that nothing prevents an applicant from requesting "a continuance to obtain the [corroborating] materials" or "mov[ing] to reopen the record to supply corroboration." *Chhay*, 540 F.3d at 7 n.2. Singh did neither.

Nirmal Singh came to this country by crossing the U.S.-Canadian border in a car, without inspection. So he has no airplane ticket stub or border crossing record to prove when he came. Still, it was Singh's burden to prove, and by "clear and convincing evidence," that he filed his asylum application within a year of his arrival. 8 U.S.C. § 1158(a)(2)(B).

Singh testified to a date of arrival and gave some background facts concerning his departure from India which were consistent with that date. He also introduced a document confirming that he had not left India before late August or September 2004, thereby corroborating to some degree his arrival date but not with enough specificity to prove that the date he ostensibly filed his asylum application, October 13, 2005, was within a year after his arrival.

The IJ understandably developed a concern that without some further corroboration there was not "clear and convincing" evidence of Singh's arrival date. But the IJ never expressed that concern to Singh. He did not ask Singh whether he could provide further corroboration, suggest what it might be, and, if Singh had no such evidence available, ask why not. It is far from obvious that any further corroboration of Singh's trek across the border was available: Someone who crosses the border illegally generates no official record of having done so, and one unfamiliar at that point with our asylum law would have no reason to keep receipts of purchases or places of accommodation.

The procedural details of the new corroboration requirements thus become critical here: May the immigration judge fault an alien after the fact for failing to provide corroboration of otherwise credible testimony? Or does the REAL ID Act require some notice that the IJ will require corroboration and an opportunity to explain why none is available if it is not? My disagreement with the majority centers on these questions.

## I.

As a preliminary matter, I do not believe that 8 U.S.C. § 1158(b)(1)(B)(ii) applies to the one-year filing requirement at issue in Singh's case. Section 1158(b) addresses the manner in which an asylum applicant can sustain his burden of proof "to establish that [he] is a refugee, within the meaning of section 1101(a)(42)(A)."[1] 8 U.S.C. § 1158(b)(1)(B)(i). The one-year bar, 8 U.S.C. § 1158(a)(1), was adopted by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, and is not part of the long-standing substantive definition of who qualifies as a "refugee." *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 427-28 (1987) (discussing the definition of "refugee" in § 1101(a)(42) as added by the Refugee Act of 1980, 94 Stat. 102).

Instead, it is 8 U.S.C. § 1229a(c)(4)(B) that applies to Singh's claim that he satisfied the one-year filing requirement.[2]

---

[1]Section 1101(a)(42)(A) in turn defines a "refugee" as

any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]

[2]Section 1229a(c)(4)(B) provides:

(B) Sustaining burden

The applicant must comply with the applicable requirements to submit information or documentation in support of the applicant's application for relief or protection as provided by law or by regulation or in the instructions for the application form. In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has

This provision, like § 1158(b)(1)(B)(ii), was added to the Immigration and Nationality Act by the Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231. In language similar but not identical to § 1158(b)(1)(B)(ii), § 1229a(c)(4)(B) sets the standard for sustaining an applicant's burden that he has "satisfie[d] the applicable eligibility requirements" for "relief or protection from removal."[3] § 1229a(c)(4)(A). Asylum is one such form of relief from removal, and the one-year filing requirement is an "applicable eligibility requirement[ ]" for relief.

So § 1229a(c)(4)(B) is the provision actually here applicable. As I note later, it differs in some ways that could possibly

satisfied the applicant's burden of proof. In determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

[3]That 8 U.S.C. § 1229a(c)(4)(B) applies to the one-year bar determination is confirmed by another statutory provision, 8 U.S.C. § 1231(b)(3)(C). In the latter section, Congress directly incorporated the § 1158(b)(1)(B)(ii) asylum corroboration standard as the standard applicable to withholding of removal, but did so only for determination of "whether an alien has demonstrated that the alien's life or freedom would be threatened" based on membership in a protected group. Section 1229a(c)(4)(B), therefore, acts as the catchall provision for non-persecution related eligibility requirements applicable to asylum and withholding of removal *and* requirements for other forms of relief, such as relief under the Convention Against Torture. (In *Shrestha v. Holder*, this Court applied an adverse credibility determination, based in part on the corroboration standard found in § 1158(b)(1)(B)(ii), to a claim for relief under the Convention Against Torture. *See* 590 F.3d 1034, 1047-49 (9th Cir. 2010). The *Shrestha* court did not explain why it proceeded in this fashion, but it apparently thought, erroneously, that § 1158(b)(1)(B) and § 1229a(c)(4) are identical. *See id.* at 1040. As we are not dealing with a CAT claim, *Shrestha*'s error in this regard does not affect this case.)

matter to the outcome of this case from the provision the BIA applies and the majority discusses. Also, the recent BIA precedent on which the majority relies in the alternative dealt with § 1158(b)(1)(B)(ii), not § 1229a(c)(4)(B). *See Matter of J—Y—C—*, 24 I. & N. Dec. 260, 263, 265-66 (BIA 2007). No deference based on *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), can be applicable to this case unless and until the BIA in a published opinion interprets the statute that *does* apply here. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc).

I would remand to the BIA for application of the correct legal provision. *See Azanor v. Ashcroft*, 364 F.3d 1013, 1021 (9th Cir. 2004).

## II.

However, even applying 8 U.S.C. § 1158(b)(1)(B)(ii) as does the majority, I would hold that the BIA did not correctly interpret and apply it to Singh's claim.[4] In my view, the language of the provision contemplates that an IJ will perform a sequential analysis in assessing the strength of an applicant's testimony, any corresponding need for corroborating evidence, and the reasons requested corroborating evidence is unavailable if it is. That sequence must proceed as follows: *First*, the IJ must determine whether an applicant's testimony meets the applicant's standard of proof. If not, an IJ may require corroborating evidence. *Second*, the IJ must give an applicant notice of the specific facts for which further corroboration is needed. *Third*, if no such corroboration is produced, an IJ must provide the applicant an opportunity to explain on the record why this evidence is not reasonably available. *See Toure v. Att'y Gen. of U.S.*, 443 F.3d 310, 323-24 (3d Cir.

---

[4]I note in the remainder of this opinion when 8 U.S.C. § 1158(b)(1)(B)(ii) differs from § 1229a(c)(4)(B) in a way potentially pertinent to Singh's claim.

2006) (vacating and remanding a post-REAL ID Act case where the IJ did not provide an applicant "with notice and an opportunity to present an explanation" for the absence of corroborating evidence and the IJ did not indicate she expected such evidence until her oral ruling). Because the IJ did not perform this analysis in Singh's case, I respectfully dissent.

The majority treats § 1158(b)(1)(B)(ii) as permitting an IJ to require corroborating evidence without making such a threshold determination and, apparently, to do so with only the broadest of notice and without inviting an opportunity to explain why additional corroboration is unavailable. The majority reaches this interpretation of the statute by assuming, without deciding, that the statute is ambiguous, and holding that if it is, we must grant *Chevron* deference to the BIA's interpretation of this provision, announced in *Matter of J—Y —C—*, 24 I. & N. Dec. 260 (BIA 2007). *See* Maj. Op. at 5739; *Chevron*, 467 U.S. at 842-43. *Matter of J—Y—C—*, the majority says, precludes my sequential reading of § 1158(b)(1)(B)(ii) because it made clear that the REAL ID Act codified the "corroboration rule" of *Matter of S—M—J—*, 21 I. & N. Dec. 722 (BIA 1997). *See* Maj. Op. at 5939-40. Under the "corroboration rule," in the majority's view, applicants should expect that their failure to produce corroboration satisfactory to the IJ for any fact on which they rely in their application or their testimony could be grounds for denial of asylum.

As I discuss below, the plain language of the provision compels a conclusion opposite to that of the majority. In the alternative, any ambiguity in the statutory language must be read in light of due process concerns, precluding *Chevron* deference to the BIA as to the procedural questions. Moreover, neither *Matter of J—Y—C—* nor *Matter of S—M—J—* directly controls the question whether an IJ must provide notice to an applicant of which portions of his application require corroboration and an opportunity to explain the absence of such evidence. As a result, even to the limited extent that

§ 1158(b)(1)(B)(ii) admits of ambiguity, granting *Chevron* deference to these precedential BIA decisions is of no assistance in resolving the question before us.

## A.

The language of § 1158(b)(1)(B)(ii) provides in full:

(ii) Sustaining burden

The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

Our circuit interpreted this provision in *Aden v. Holder*, 589 F.3d 1040 (9th Cir. 2009). *Aden* left open the question whether § 1158(b)(1)(B)(ii) required "notice of [an applicant's] need for [corroboration] and time to provide it," as the IJ in that case did continue the proceedings after identifying for the petitioner the fact for which he would require corroboration. *Id.* at 1043. Moreover, *Aden* did not examine whether an IJ is required to develop the record and enunciate his reasoning with respect to why desired corroborating evidence is reasonably available. *See id.* at 1045-46.

I therefore turn directly to the language of the statute. Contrary to the majority's conclusion, the relevant language

clearly establishes a sequential process: First, an IJ is to "determin[e] whether the applicant has met the applicant's burden" and in doing so may "weigh the credible testimony along with other evidence of record." "Where"—which in this context is equivalent to "if" or "when," *see* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 928 (2d ed. 1995)—the IJ in conducting this weighing is not fully persuaded by the applicant's "otherwise credible testimony," he may "determine[ ] that the applicant *should* provide evidence that corroborates" the testimony. (Emphasis added.) The statute does not use the term "should *have* provided," in the present perfect tense, which would signal that the applicant could be faulted after the fact for not having provided corroboration. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). Use of the word "should" thus expresses an imperative upon the applicant to provide further corroboration to meet the applicant's burden once the IJ identifies areas where additional corroboration is needed. Moreover, necessarily implicit in the future-oriented "should" construction is notice to the applicant of the IJ's determination.

The statutory language then continues in this vein, requiring that if the IJ determines that the applicant "should" provide corroborating evidence, then "such evidence *must be provided* . . . ." (Emphasis added.) Again, and critically, "must be provided" is conditional on the IJ's determination that corroborating evidence should be provided; it therefore speaks to the future, seen from the perspective of the time the IJ identifies the need for additional evidence, not the past. The statute does not use "must have been provided" or some other "backward looking" formulation. And again, the "must be provided" future-oriented locution signals a requirement that the applicant be informed of what is required.

Finally, the statute provides an exception: the applicant need not produce evidence corroborating otherwise credible evidence if the applicant "does not have the evidence and can-

not reasonably obtain it." This exception follows the "must be provided" language, and is stated, again, in the present and future tenses, not the past tense. So the statute contemplates a sequence in which the IJ first decides whether the applicant "should" provide corroboration, and the applicant then has an opportunity, if he does not provide it, to explain that he then "does not have it and cannot"—not "*was* unable to"—"reasonably obtain it." The "cannot reasonably obtain it" phrase is, once again, necessarily future-oriented. Why would it matter whether the applicant "can"—now—obtain the information unless he is to be given the chance to "obtain it"? So in this respect as well the language suggests a sequential process in which an applicant is to be given an opportunity to comply rather than faulted—retrospectively and without notice—for not bringing forward additional evidence he was never told was needed.

My plain reading of § 1158(b)(1)(B)(ii) would not require the IJ to hold two hearings. *See* Maj. Op. at 5742-43 (quoting *Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir. 2008)). Rather, the sequential analysis would be a procedural protection, requiring an IJ to make a threshold determination that an applicant's otherwise credible testimony cannot alone meet his burden before the IJ imposes further corroboration requirements. If—as the majority contends—the need for such evidence is generally foreseeable, most applicants will likely have sought such corroboration before the hearing. So, once corroboration is required, an applicant will most often explain then and there why such evidence is unavailable, rather than seeking a continuance. In other cases, an applicant may request a continuance once he is on notice that a certain type of corroboration, unexpected before his hearing, will be required. That possibility is one that the majority concedes under its reading of the statute. *See* Maj. Op. at 5744 n.13.[5]

---

[5]The majority also notes that "nothing prevents" an applicant from requesting a motion to reopen to provide corroboration at a later time.

Thus, neither the majority's interpretation of § 1158(b)(1)(B)(ii) nor my own would automatically either require or foreclose a second hearing.

## B.

As I recount above, in my view the language of § 1158(b)(1)(B)(ii) is absolutely clear as to the sequential analysis in which an IJ must engage. It is not as clear in requiring notice to the alien and an opportunity to explain the absence of corroboration—although, as I have explained, those requirements are necessarily implicit in the sequence set out. But even were I to agree that the majority's alternative reading of § 1158(b)(1)(B)(ii) as excluding notice and opportunity to explain requirements is a plausible interpretation of an ambiguous statute, I could not so conclude in the face of the due process concerns that interpretation creates. I would instead apply the canon of constitutional avoidance, which offers an alternative route to my reading of the provision and eliminates any concern about deference to the BIA's case law —which, as I discuss below, is not contrary to my interpretation anyway.

REAL ID changed the standards governing application for asylum but did not affect the vitality of our Fifth Amendment due process case law. That law requires a "full and fair hearing" in deportation proceedings. *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999). As a result, to the extent Congress's intent in drafting § 1158(b)(1)(B)(ii) is not quite

---

Maj. Op. at 5744 n.13. However, an alien must show that evidence presented with a motion to reopen was not "available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). As a result, if an IJ decides to require corroboration and finds that such evidence was reasonably obtainable at the time of the initial hearing, the BIA is highly unlikely to grant a motion to reopen. Such a reality underscores the need for notice of the need for corroboration once the IJ decides to require it.

clear, "we are governed by the canon of constitutional avoidance, which requires a statute to be construed so as to avoid serious doubts as to the constitutionality of an alternate construction." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006). Applying this "tool for choosing between competing plausible interpretations of a statutory text, [which] rest[s] on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts," *Clark v. Martinez*, 543 U.S. 370, 381 (2005), reinforces my conclusion that the REAL ID Act requires notice to the applicant that the IJ is requiring evidence corroborating his credible testimony and, if the applicant does not provide the requested evidence, an opportunity to explain why he does not have it and cannot obtain it.

We have found a due process violation where the BIA did not tell an alien "that his credibility was questionable, or that any discrepancies appeared to exist[ ] nor . . . ask[ ] [him] to explain any such perceived discrepancies" before making an adverse credibility finding.[6] *Campos-Sanchez*, 164 F.3d at 450; *see also Abovian v. I.N.S.*, 219 F.3d 972, 978 (9th Cir. 2000). Moreover, due process requires "specific, cogent rea-

---

[6]*Campos-Sanchez v. I.N.S.*, 164 F.3d 448 (9th Cir. 1999), like *Abovian v. I.N.S.*, 219 F.3d 972 (9th Cir. 2000), and *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655 (9th Cir. 2003), considered a petition for review filed before the adoption of 8 C.F.R. § 1003.1(d)(3)(I)(c), which limits to clear error the BIA's review of an IJ's factual determinations. *See* Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54,902 (Aug. 26, 2002) (codified at 8 C.F.R. § 1003.1(d)(3)(i)), 54,905 (codified at § 1003.3(f)); see also *Mendoza Manimbao*, 329 F.3d at 661 (discussing the import of § 1003.1(d)(3)(i) in the context of credibility determinations). Because the BIA can no longer review an IJ's factual findings de novo, sufficient notice and an opportunity to explain inconsistencies must now be provided by the IJ. Consistently with this analysis, in *Shrestha v. Holder*, this Court relied on pre-2002 case law that required the BIA to give specific reasons for an adverse credibility determination in support of *Shrestha*'s conclusion that an IJ must do the same, even after REAL ID. *See* 590 F.3d 1034, 1042 (9th Cir. 2010) (citing *Castillo v. I.N.S.*, 951 F.2d 1117, 1121 (9th Cir. 1991)).

sons" for concern about an applicant's credibility; "boilerplate notice that [an alien's] credibility is at issue would fall short[.]" *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 662 (9th Cir. 2003) (alteration omitted). The rule that an IJ must provide such explicit and specific reasoning for an adverse credibility determination remains unchanged by REAL ID. *See Shrestha v. Holder*, 590 F.3d 1034, 1042-43 (9th Cir. 2010).

At a minimum, then, our prior holdings suggest a serious possibility that an IJ would deprive an alien of due process if the IJ did not give an alien providing credible testimony specific notice as to the kind of corroborating evidence required and an opportunity to explain on the record why he could not provide it.

We have also specifically indicated that a demand for immediate presentation of corroborating evidence, identified as necessary only at an applicant's hearing, would raise serious due process concerns "by depriving [the applicant] of his guarantee of a reasonable opportunity to present evidence on his behalf . . . ." *Marcos v. Gonzales*, 410 F.3d 1112, 1118 n.6 (9th Cir. 2005). There is no reason this constitutionally based observation should be affected by the REAL ID Act either. I would therefore hold that the language of § 1158(b)(1)(B)(ii) must be read to avoid this serious concern by adopting an understanding of the latent ambiguities that alleviates the constitutional concerns unless that interpretation " 'is plainly contrary to the intent of Congress.' " *Oregon v. Ashcroft*, 368 F.3d 1118, 1125 (9th Cir. 2004) (quoting *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)).

I note as well that the constitutional avoidance approach would eliminate any basis for deference to the BIA's statutory construction if the BIA's construction is different from one reached applying that approach, because "[t]he balance of expertise . . . shifts against judicial deference to agency inter-

pretations when a constitutional line is about to be crossed." *Williams v. Babbitt*, 115 F.3d 657, 662 (9th Cir. 1997). "When agencies adopt a constitutionally troubling interpretation, . . . we can be confident that they not only lacked the expertise to evaluate the constitutional problems, but probably didn't consider them at all." *Id.* But, as it turns out, the BIA's construction of the corroboration provision is not in fact different from the construction dictated by the constitutional avoidance approach, so the deference issue just doesn't arise.

## C.

*Matter of J—Y—C—* and *Matter of S—M—J—* did not decide the procedural issues with respect to which the majority purports to defer to those two cases in the event § 1158(b)(1)(B)(ii) is ambiguous. As a result, even if this statutory provision is in some respects ambiguous *and* principles of constitutional avoidance do not apply, there is simply no need to defer to these off-point BIA opinions.

*Matter of J—Y—C—*, 24 I. & N. Dec. 260, is certainly not contrary to my due process-sensitive interpretation. It does not address the procedural standards inherent in the language of § 1158(b)(1)(B)(ii) and so does not merit deference on these questions.

In *Matter of J—Y—C—*, an IJ found an asylum applicant not credible and also "noted that the respondent failed to produce corroborative documentary or testimonial evidence that was reasonably available to him." *Id.* at 261. On appeal of the denial of the application, the BIA did not address whether the applicant was or should have been given any notice of what corroborating evidence was ultimately required, nor did it discuss whether the IJ offered the applicant an opportunity to explain why the evidence was not available.[7] Instead, the BIA

---

[7]The *J—Y—C—* opinion indicates that the applicant attempted to explain the absence of specific corroborating evidence, suggesting that he

simply listed three pieces of corroborating evidence that should have been introduced but were not and stated that the applicant "ha[d] not shown that such information was unavailable to him, as required by the [REAL ID] Act." *Id.* at 265-66. *As such J—Y—C—* is a purely substantive interpretation of § 1158(b)(1)(B)(ii). It does not address any procedural question or consider the statutory language in a procedural light, and so is not at odds with my analysis of the statutory language of § 1158(b)(1)(B)(ii) as setting out a mandatory procedural sequence.

Nor are we bound to defer to *Matter of J—Y—C—*'s more general conclusion that Congress codified the BIA's earlier precedent of *Matter of S—M—J—*, 21 I. & N. Dec. 722, when it passed the REAL ID Act. *S—M—J—* did not consider any particular statutory language or focus on procedural questions. My conclusions regarding the new corroboration provision's procedural requirements turn on the precise language used and not on broad generalizations concerning legislative intent.

Moreover, even if we were to defer to *Matter of S—M—J—*, to the extent that case has implications for the procedure for requiring corroboration after REAL ID, it supports rather than contradicts my conclusion. In *Matter of S—M—J—*, the BIA recognized that an applicant claiming a fear of future persecution could be credible and yet fail to meet her burden of proof. As a result, it held, an applicant could be required to "provide background evidence so that her claim can be evaluated in the broader context of the conditions of her country." *Id.* at 731. Moreover, it stated:

> [W]e also expect general corroborating evidence, from a reliable source, of persecution of persons in

---

may have had some notice of what evidence the IJ sought and an opportunity to contest its requirement. *See* 24 I. & N. Dec. at 265-66 ("The respondent first claimed that [the absence of statements from family to corroborate his claim] was because [his relatives] were illiterate but later indicated that he never sought such documents [from them].").

circumstances similar to an applicant where such information is readily available. In the example of the union vice-president, for example, we would expect general information that union members in her country faced persecution. However, specific documentary corroboration of an applicant's particular experiences is not required unless the supporting documentation is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers.

*Id.* at 726. Although it is clear from this and other language in *S—M—J—* that the BIA offered prescriptive guidance about the *types* of corroborating information that an applicant should bring to be secure in his application, the opinion does not resolve whether an IJ must consider the strength of an applicant's testimony before requiring additional corroborating evidence, or whether the IJ must provide notice to the applicant of what kind of additional evidence is necessary.

As to providing an applicant with an opportunity to explain the absence of corroborating evidence, S—M—J— states that an IJ "must ensure that the applicant's explanation [for why corroborating evidence is unavailable] is included in the record." *Id.* at 724. Thus, contrary to the Majority's assertion, Maj. Op. at 5743-44, *S—M—J—* clearly requires an IJ to develop the record with regard to whether corroborating evidence is available and if not, why not.

### III.

In light of my understanding of the statute, I conclude that the IJ did not correctly apply § 1158(b)(1)(B)(ii) to Singh's claim. I have no grievance with the IJ's initial decision to look to corroborating evidence in this case, even given Singh's presumption of credibility,[8] particularly given the high, "clear

---

[8]Because the IJ did not make an adverse credibility finding with respect to any portion of Singh's testimony, Singh is afforded a "rebuttable pre-

and convincing" evidence burden of proof on the applicant with respect to the one-year bar. However, I would hold that the IJ erred by not giving Singh notice that the letter Singh introduced as corroboration for the one-year filing requirement was insufficient or that the IJ was requiring something more. The IJ also erred by not developing the record enough for us meaningfully to review whether additional corroborating evidence was reasonably available.

"Common sense establishes that it is escape and flight, not litigation and corroboration, that is foremost in the mind of an alien who comes to these shores fleeing detention, torture and persecution." *Senathirajah v. I.N.S.*, 157 F.3d 210, 216 (3d Cir. 1998). As a result, as the BIA recognized in *Matter of S —M—J—*, "[i]t is hardly possible for a refugee to 'prove' every part of his case . . . ." 21 I. & N. Dec. at 725 (quoting Office of the United Nations High Commissioner for Refugees, Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees, ¶ 203, at 48 (1992)). Where, as here, an IJ nonetheless is not fully satisfied that the alien's own credible testimony satisfies his burden of proof, it will rarely be self-evident what kind of evidence would be sufficient or whether that evidence is reasonably available. On my reading of the statute, the alien must be told, at least in general terms, what sort of corroboration the IJ is looking for and given the chance to explain why it is not available if it is not.

## A.

The majority maintains that Singh had sufficient notice in this case because the IJ told Singh's counsel "to bring whatever documents in the original form that he has to court with

---

sumption of credibility on appeal." 8 U.S.C. § 1158(b)(1)(B)(iii). The government has not attempted to rebut that presumption.

him." Maj. Op. at 5742. But the IJ's surrounding comments make plain that the IJ wanted documents to corroborate Singh's identity, not a document indicating Singh's date of entry.[9]

In any event, such a vague instruction cannot pass muster as notice in the context of Singh's detailed application,[10] just as the general language of REAL IDand the asylum application form do not provide sufficient notice of the corroboration that an IJ ultimately chooses to require.[11] These are general

---

[9]The IJ stated:

> Okay, Mr. Ketter, again, please advise your client to bring whatever documents in the original form that he has to court with him. He has some time before the issuance, or before the case is set for the actual merits hearing, that is going to be just about a month. In [sic] Indian Consulate has a web site, which indicates that lost or stolen passports can be replaced, or the temporary travel documents can be issued in as little as, I believe five days notice, and they can be issued on the grounds for evidence such a[s] school documents, driving licenses, and so forth. Frequently the same documents that are given to the Immigration Court, his identity documents, are the documents the Indian Government will receive, and issue their [sic] own document.
>
> So that being said, take a look at the web site, if you think it is appropriate, *and if not*, have your client bring whatever documents he has. . . .

(Emphasis added).

[10]Among other facts alleged in Singh's asylum application, Singh specified twelve dates on which important events occurred, several instances of torture and the specific places at which the torture took place, the names of locations where Singh sought medical treatment, and several attempts by Singh's family and himself to seek refuge in other specified locations.

[11]The I-589 application, which Singh completed, advised that he "should attach documents evidencing the general conditions in the country from which you are seeking asylum or other protection and the specific facts on which you are relying to support your claim. If this documentation is unavailable or you are not providing this documentation with your application, please explain why in your responses to the following questions."

statements, divorced from the individualized, sequential assessment contemplated by § 1158(b)(1)(B)(ii).

The majority also notes that the asylum officer, when declining to grant asylum, indicated that Singh failed to establish his entry within one year of applying for asylum, seeing that assessment as adequate to advise Singh of the need for corroborating evidence of his arrival in the United States. See Maj. Op. at 5742. But the asylum officer's referral does not indicate whether Singh introduced at his asylum interview a copy of the letter from Nainital upon which he relied as corroboration for his claim before the IJ, nor do we have a transcript of what Singh said or was told during his interview with an asylum officer.

Moreover, immigration court proceedings are, as a general matter, entirely independent of proceedings before an asylum officer. An asylum officer may grant asylum but not deny it, 8 C.F.R. § 1208.14(c)(1), and any refusal to grant asylum is considered entirely de novo by an IJ in removal proceedings, *Singh v. Gonzales*, 403 F.3d 1081, 1086 n.2 (9th Cir. 2005). An asylum officer's advice when refusing to grant asylum therefore cannot be controlling in removal proceedings as a basis for denying asylum.[12]

---

[12]The statutory provision that the BIA and majority should have applied to Singh's claim, 8 U.S.C. § 1229a(c)(4)(B), provides even stronger support for the conclusion that an IJ must make a determination on the record that an applicant's testimony alone is not sufficient to satisfy the applicant's burden before requiring corroborating evidence. *Compare* 8 U.S.C. § 1229a(c)(4)(B) ("In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof.") *with* 8 U.S.C. § 1158(b)(1)(B)(ii) ("The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee.").

Moreover, Singh submitted with respect to the one-year bar a document that corroborated, to some extent, his date of entry. In addition to several documents regarding country conditions in India, Singh provided eleven documents to corroborate the facts to which he testified and his identity, or to demonstrate his efforts to obtain such corroboration. Among these documents was a letter from the head of a temple in Nainital, India, confirming that Singh stayed at the temple for nearly a month in August 2004 before leaving for Delhi.

Singh contended that this letter corroborated his date of entry in October 2004. While not confirming the precise date, the letter did strengthen—and in that sense corroborate— Singh's testimony, by showing that the *earliest* Singh could have arrived in the United States was September 2004, after his stay in Nainital. *See* BLACK'S LAW DICTIONARY 596 (8th ed.) (defining "corroborating evidence" as "[e]vidence that differs from but strengthens or confirms what other evidence shows"). The letter was also consistent with Singh's detailed testimony, in which he indicated that he was arrested on August 14, 2004, by the authorities in India, went to Nainital in August 2004 for one month, and then went to Delhi, where he stayed for thirty days before leaving India.

At no time did the IJ ask any questions to follow up on the need for corroboration or to indicate that the letter from the temple was insufficient to corroborate Singh's testimony. Only *after* closing the record did the IJ explain to Singh:

> You traveled to Canada on a false passport in someone else's name, and we do not have any documentation from Canada of when you arrived. You entered the United States without inspection, so we have no record of when you entered this country, and this issue was raised at the Asylum Office, and they also found that you had not proven when you entered the country.

Now you have a document from the Gurdwar in India. *Sir, just listen right now. This is not a discussion.* You have a document from a Gurdwar before you left India, but that does not prove when you came into the United States. So I do not find that you filed a timely application. (Emphasis added.)

It is therefore clear that the IJ did not indicate until after the close of evidence that the letter Singh introduced, which did to some degree corroborate Singh's testimony, was insufficient, nor did the IJ give Singh an opportunity to explain the absence of additional corroborating evidence. The IJ therefore erred. *See Toure*, 443 F.3d 310.

**B.**

Nor did the IJ give Singh an opportunity to explain why he could not reasonably provide other evidence corroborating his date of entry. As a result, we have no basis upon which to determine whether the IJ substantively erred in requiring such evidence here. *See Chukwu v. Att'y Gen. of U.S.*, 484 F.3d 185, 192 (3d Cir. 2007) (noting that a court reviewing an IJ's decision to require corroborating evidence "cannot ascertain whether the trier of fact would be compelled to find the evidence unavailable unless the applicant is given a chance to explain why he thinks it is unavailable"); *see also Ghaly v. I.N.S.*, 58 F.3d 1425, 1430 (9th Cir. 1995) (requiring the BIA to "provide a comprehensible reason for its decision sufficient for [the Court] to conduct [its] review and to be assured that the petitioner's case received individualized attention"). That such an explicit determination is required for review is supported by the language of 8 U.S.C. § 1252(b)(4), the applicable judicial review provision, which directs that "[n]o court shall reverse a *determination* made by a trier of fact with respect to the availability of corroborating evidence, as described in section 1158(b)(1)(B) [or] 1229a(c)(4)(b) . . . unless the court finds . . . that a reasonable trier of fact is com-

pelled to conclude that such corroborating evidence is unavailable."[13] (Emphasis added.)

Nowhere in the IJ's oral ruling or in the merits hearing transcript did the IJ make a determination that additional corroborating documents were reasonably available to Singh.[14] Thus, we have no way of determining why the IJ thought corroborating evidence of Singh's entry, beyond what Singh already produced, was reasonably available, if he did. And the BIA's opinion does nothing to alleviate this problem.

The majority fills this gap by adopting what appears to be a per se rule that corroboration of date of entry is "easily subject to verification" and "eminently reasonable to expect." Maj. Op. at 5741-42 (internal quotation omitted). I very much doubt that the REAL ID Act corroboration provisions, dependent as they are on IJ determinations and weighing of facts, permit court-imposed, across-the-board rules of this kind. But

---

[13]This standard has been described as a "heightened" one, *Shrestha v. Holder*, 590 F.3d at 1047, which it is as compared with our earlier standard regarding the availability of corroborating evidence. The new statutory standard of review regarding corroboration is the same, though, as that used to review other factual findings. *See* 8 U.S.C. § 1252(b)(4)(B) (providing that "administrative findings of fact are conclusive [on a court reviewing an order of removal] unless any reasonable adjudicator would be compelled to conclude to the contrary").

[14]Precisely where the burden falls with regard to the availability of additional corroborating documents may depend on whether 8 U.S.C. § 1158(b)(1)(B)(ii) or § 1229a(c)(4)(B) applies. *Compare* 8 U.S.C. § 1158(b)(1)(B)(ii) ("Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.") *with* 8 U.S.C. § 1229a(c)(4)(B) ("Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence."). As the IJ in Singh's case made no determination regarding the availability of corroborating documents, he erred regardless of the applicable statutory provision.

even if there are some circumstances that admit of such edicts, this per se rule cannot stand. It would have the effect of rendering asylum unobtainable for *most* people who enter without inspection, as Singh's circumstances illustrate.

Singh stated that he had given his real passport to an agent before leaving India and "snuck across the border" into the United States. Just as "[p]ersecutors are hardly likely to provide their victims with affidavits attesting to their acts of persecution," *Bolanos-Hernandez v. I.N.S.*, 767 F.2d 1277, 1285 (9th Cir. 1984), so smugglers are hardly likely to offer a receipt for their services. In some cases, asylum seekers might immediately meet family or friends in the United States who can later attest to their time of arrival, but many will arrive alone and encounter only strangers on their first days in the country. They may be transported or provided lodging by the smugglers, who, again, are unlikely to provide receipts or be available to testify. And, although asylum seekers may on occasion take buses or stay in public places of lodging upon their arrival, they are unlikely to know American asylum law sufficiently well to hoard receipts so they can later prove their date of entry. Most of them surely will not "take snapshots" during their journey and collect "souvenirs," Maj. Op. at 5742, as the majority naively envisions. The majority's supposition that an illegal entry is "easily subject to verification" is, in short, fanciful.

\* \* \* \* \*

For these reasons, I would grant Singh's petition and remand to the BIA to decide the case under the proper statutory provision. Alternatively, I would remand with instructions to consider whether the IJ's holding can be sustained on any alternative ground raised before the BIA, and if not, to remand to the IJ to provide Singh with an indication of the sort of corroboration required and an opportunity to provide it or to explain on the record why he cannot. I therefore respectfully dissent.